## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MIKAYLA CHEYENNE SAVAGE,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:24-cv-00666** |
| | § | |
| **HARRIS COUNTY, TEXAS; SHERIFF ED** | § | **JURY DEMANDED** |
| **GONZALES, in his official capacity;** | § | |
| **DETENTION OFFICER ARNOLDO** | § | |
| **MARTINEZ, in his individual capacity;** | § | |
| **DETENTION OFFICER ANDREW** | § | |
| **RADA, in his individual capacity;** | § | |
| **DETENTION OFFICER DANIKA** | § | |
| **MATHEWS, in her individual capacity;** | § | |
| **DETENTION OFFICER OZALYNN** | § | |
| **LOZANO, in his individual capacity;** | § | |
| **DETENTION OFFICER TRUCELL** | § | |
| **LAGARDE, in her individual capacity;** | § | |
| **DETENTION OFFICER TAYLOR** | § | |
| **HODGES, in his individual capacity;** | § | |
| **DETENTION OFFICER GLORIA** | § | |
| **EZEOKE, in her individual capacity; LAW** | § | |
| **ENFORCEMENT OFFICER MICHAEL** | § | |
| **THOMAS, in his individual capacity; LAW** | § | |
| **ENFORCEMENT OFFICER LAKISHA** | § | |
| **CHEATHAM, in her individual capacity;** | § | |
| **and DETENTION OFFICER MARILYN** | § | |
| **JOHN, in her individual capacity;** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## DEFENDANTS HARRIS COUNTY AND SHERIFF ED GONZALEZ'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

Page(s)

**NATURE AND STAGE OF PROCEEDING** ............................................................. 1

**STANDARD OF REVIEW** ....................................................................................... 2

**STATEMENT OF ISSUES** ....................................................................................... 3

**SUMMARY OF ARGUMENT** .................................................................................. 3

**JUDICIAL NOTICE** ................................................................................................. 4

**ARGUMENTS AND AUTHORITIES** ....................................................................... 5

    14.     **Statute of Limitations.** ............................................................................. 5

    22.     **Insufficient Allegations.** ........................................................................... 8

    51.     **Deliberate Indifference & Failure to Train, Supervise and Discipline.** .............. 16

    59.     **Policy, Pattern, Practice & Custom.** ...................................................... 20

    65.     **Duplicative Claims/Parties.** ................................................................... 21

**CONCLUSION** ........................................................................................................ 22

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................... 2, 3

*Aviles v. Saldivar,*
    No. 4:22-CV-03571, 2023 WL 5487668 (S.D. Tex. Aug. 23, 2023) ...................... 17

*Baker v. Putnal,*
    75 F.3d 190 (5th Cir. 1996) ................................................................................. 18

*Balle v. Nueces Co.,*
    952 F.3d 552 (5th Cir. 2017) ................................................................................ 6

*Balle v. Nueces County,*
    952 F.2d 552 (5th Cir. 2017) ................................................................................ 7

*Beckwith v. City of Houston,*
    790 Fed. Appx. 568 (5th Cir. 2019) ..................................................................... 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................... 2, 3

*Big Thirst, Inc. v. Donoho,*
    657 F.Supp.3d 914 ( W.D. Tex. 2023) ............................................................... 13

*Board of County Commissioners of Bryan County Oklahoma v. Brown*,
  520 U.S. 397 (1997) ........................................................................ 18
*City of Canton, Ohio v. Harris*,
  489 U.S. 378 (1989) ................................................................... 18, 19
*Clark v. Thompson*,
  850 F.Appx. 203 (5th Cir. 2021) ...................................................... 6
*Conner v. Travis County*,
  209 F.3d 794 (5th Cir. 2000) .......................................................... 18
*Connick v. Thompson*,
  560 U.S. 51 (2011) .......................................................................... 20
*Connick v. Thompson*,
  563 U.S. 51 (2011) ............................................................... 18, 19, 20
*Cozzo v. Tangipahoa Parish Council–Pres. Gov't*,
  279 F.3d 273 (5th Cir.2002) ........................................................... 19
*Doe v Edgewood Independent School District*,
  964 F3d 351 (5th Cir 2020) ............................................................ 17
*First Emergency Order Regarding Covid*,
  596 S.W.3d 265 (Tex. 2020) ............................................................ 7
*Hale v. King*,
  642 F.3d 492 (5th Cir. 2011) ............................................................ 3
*Jackson v. Procunier*,
  789 F.2d 307 (5th Cir. 1986) ............................................................ 2
*Jacobsen v. Osborne*,
  133 F.3d 315 (5th Cir. 1998) ............................................................ 6
*Jones v. Bock*,
  549 U.S. 199 (2007) .......................................................................... 7
*Kentucky v. Graham*,
  473 U.S. 159 (1985) ........................................................................ 21
*Kingsley v. Hendrickson*,
  576 U.S. 389 (2015) ..................................................................... 8, 12
*Leal v. McHugh*,
  731 F.3d 405 (5th Cir. 2013) ............................................................ 3
*Monell v. New York City Dept. of Social Services*,
  436 U.S. 658 (1978) ...................................................... 2, 3, 14, 20
*Morin v. Caire*,
  77 F.3d 116 (5th Cir. 1996) .............................................................. 2
*Peterson v. City of Fort Worth*,
  588 F.3d 838 (5th Cir. 2009) .......................................................... 20
*Pineda v. City of Houston*,
  291 F.3d 325 (5th Cir. 2002) .......................................................... 17
*Piotrowski v City of Houston*,
  237 F3d 567 (5th Cir 2001) ....................................................... 17, 20
*Roberts v. City of Shreveport*,
  397 F.3d 287 (5th Cir. 2005) ..................................................... 18, 19
*Sanchez v. Young Cnty.*,
  956 F.3d 785 (5th Cir. 2020) .......................................................... 20

*Shaw v. Villanueva*,
  918 F.3d 414 (5th Cir. 2019) ............................................................... 3

*Snyder v. Trepagnier*,
  142 F.3d 791 (5th Cir. 1998) ............................................................... 18

*Taylor v. Hartley*,
  488 F. Supp. 3d 517 (S.D. Tex. 2020) ............................................ 17, 18

*Thompson v. Upshur Cnty.*,
  245 F.3d 447 (5th Cir.2001) ........................................................... 17, 19

*Valle v. City of Houston*,
  613 F.3d 536 (5th Cir. 2010) ............................................................. 20

*Waters v. City of Hearne*,
  629 F.App'x. 606 (5th Cir. 2015) ........................................................ 6

*Winzer v. Kaufman Co.*,
  916 F.3d 464 (5th Cir. 2019) .............................................................. 6

Statutes

42 U.S.C. §1983 .......................................................................... 2, 3, 6, 7
Tex. Gov't Code §22.0035 ............................................................... 7

Rules

Fed. R. Civ. P. 8(a)(2) .......................................................................... 2
Fed. R. Civ. P. 11 ............................................................................. 1, 2
Fed. R. Civ. P. 12(b)(6) ..................................................................... 1, 2
Fed. R. Civ. P. 15 ............................................................................... 6
Fed. R. Civ. P. 26 ............................................................................... 2

TO THE HONORABLE JUDGE ELLISON:

Defendants Harris County and Sheriff Ed Gonzalez (Defendants or Movants) file this motion to dismiss Plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6), and show the Court the following:

### NATURE AND STAGE OF PROCEEDING

1.      Plaintiff filed suit on February 28, 2024. Docket Entry (DE) 1.  Plaintiff made specious allegations against 31 John Doe Defendants alleging specific acts of misconduct.  Plaintiff used these specious allegations in order to engage in discovery abuse and forced Defendants to waste dozens of hours gathering documents and information about the 31 John Doe Defendants.

2.      For example, Plaintiff alleged a wrongful detention claim and based on the alleged date her charges were dismissed and the actions of two John Doe defendants. DE 1, para. 172-175. However, based on the date Plaintiff's charges were actually dismissed, there was no wrongful detention. The date of dismissal was public record and was information necessarily in Plaintiff's possession. It strains credulity to suggest Plaintiff did not have access to information showing the correct date her charges were dismissed. Thus, this allegation was made in bad faith and violated Fed. R. Civ. P. 11. Nonetheless Plaintiff continues to seek discovery on this issue.

3.      In discovery, Defendant provided Plaintiff, over 3,000 pages of documents and information, with photographs, names, and work schedules of the detention officers at the jail during Plaintiff's three-month incarceration.

4.      Plaintiff sought leave to file her First Amended Complaint August 29, 2024. DE 50-1. Mysteriously, the 31 John Does in the DE 1 shrank to merely eight newly identified individual defendants—despite Plaintiff having names, photographs, work schedules, incident reports, and, of course, Plaintiff's personal knowledge of events. What this tells us is that DE 1 was not based

on a good faith belief after a reasonable inquiry as required Fed. R. Civ. P. 11. Rather, DE 1 was simply bad faith allegations used to engage in discovery outside the scope of Fed. R. Civ. P. 26 and waste time and resources.

5.    Plaintiff asserts multiple causes of action, including civil rights violations, arising out of living conditions, alleged attacks and alleged sexual assaults Plaintiff claims occurred from June through August of 2022, while Plaintiff was an inmate in the Harris County Jail. At issue in this motion are the claims barred by limitations and the claims Plaintiff asserts against Harris County and Sheriff Gonzalez under 42 U.S.C. §1983 and *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).

6.    The movants deadline to respond is September 20, 2024.This motion to dismiss is timely. Since this is a dispositive motion, Defendants are not required to confer with Plaintiff per Court Procedure 5(G).

### STANDARD OF REVIEW

7.    This court must take all well-pleaded facts as true when considering a motion to dismiss. If a complaint fails to state a claim upon which relief can be granted, a trial court may dismiss the complaint as a matter of law. See Fed. R. Civ. P. 12(b)(6). See *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986); *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); see also *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

8.    "An unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Ashcroft*, 556 U.S. at 678-679. In short, the Plaintiff must plead plausible <u>facts</u> which if true, would impose liability on the Defendant. Thus, "dismissal is appropriate only if the complaint fails to

plead 'enough facts to state a claim of relief that is plausible on its face.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Twombly*, 550 U.S. at 570).

9.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statement," or legal conclusions couched as factual assertions are not sufficient. *See Shaw v. Villanueva*, 918 F.3d 414, 415 (5th Cir. 2019) (quoting *Ashcroft*, 556 US at 678); *see also Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) ("plaintiff must allege facts that support the elements of the cause of action in order to make out a valid claim").

## STATEMENT OF ISSUES

10. Whether Plaintiff's claims against the newly named Defendants are barred by limitations.

11. Whether Plaintiff pled facts sufficient to hold the Harris County and Sheriff Gonzalez liable under 42 U.S.C §1983 and *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).

## SUMMARY OF ARGUMENT

12. Plaintiff's claims against the Defendants should be dismissed with prejudice because:

   a.  Plaintiff's claims against the newly named individual Defendants are barred by the statute of limitations because the relation back doctrine does not apply.

   b.  Plaintiff failed to allege sufficient facts to hold Movants liable under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978).

   c.  Plaintiff's allegations against Movants are not <u>factual</u> but based upon unsubstantiated allegations made in other proceedings. The allegations are conclusory as a matter of law.

d.   Even if Plaintiff's allegations were factual, if true, they are insufficient to state a legal claim entitling Plaintiff to relief against Movants. Most of the allegations fall outside of the time period covered by Sheriff Gonzalez's administration.

e.   The allegations against Sheriff Gonzalez are duplicative of and subsumed in the allegations against Harris County; he is not a proper party.

## JUDICIAL NOTICE

13.   The Court can take judicial notice of the public records that show:

a.    The average daily population in the Harris County Jail from 2011 to present is approximately 9,000 inmates. https://charts.hctx.net/jailpop/App/JailPopHistory. This time period covers the vast majority of Plaintiff's allegations used to support *Monell* liability.

b.    The Harris County Jail releases over 23,000 inmates in a 90-day period. https://charts.hctx.net/jailpop/App/ReleasesLast90.   Extrapolating these figures shows Harris County Jail releases roughly 7,500 inmates a month and, given how many inmates are released each month, a conservative estimate is the Harris County Jail houses roughly 90,000 inmates per year.

c.    The Harris County Sheriff's Office Criminal Justice Command is responsible for the jail and employs approximately 2600 people. https://www.harriscountyso.org/AboutUs/CriminalJusticeCommand#:~:text=The%20Criminal%20Justice%20Command%20is,jail%20in%20the%20United%20States.

d.      Per the Centers for Disease Control (CDC), the U.S. death rate in 2022 was 832.8 deaths per 100,000 standard population.

https://www.cdc.gov/mmwr/volumes/72/wr/mm7218a3.htm.

e.      Sheriff Gonzalez took office in January 2017.

https://counciloncj.org/team/ed-gonzalez/.

f.      There are 34 cities within Harris County, Texas.

https://iga.harriscountytx.gov/Governance/Local.

g.      There are eight elected constables in Harris County, Texas.

https://www.harriscountytx.gov/Government/Law-Enforcement/Harris-County-Constable-Precincts.

h.      Harris Health, the County Hospital District, provides medical and mental health care in the Harris County Jail.

i.      The State of Texas dismissed all charges against Plaintiff as of August 31, 2022. Exhibit A.

## ARGUMENTS AND AUTHORITIES

14.     **Statute of Limitations.** Plaintiff's amendment to assert claims against the newly named defendants is futile and should be dismissed. In the First Amended Complaint, Plaintiff named—for the first time—Danika Matthews, Ozalynn Lozano, Trucell Lagarde, Taylor Hodges, Gloria Ezeoke, Michael Thomas, Lakisha Cheatham, and Marilyn John as Defendants. These eight individuals replaced 31 John Doe defendants. The claims against these officers are barred by the statute of limitations and should be dismissed. Plaintiff continues to overreach rather than litigating the case based on the cognizable claims.

15.     The statute of limitations for a 42 U.S.C §1983 claim in Texas is two years. *Beckwith v. City of Houston*, 790 Fed. Appx. 568, 572-73 (5th Cir. 2019). Plaintiff correctly alleges she was incarcerated in the jail between June 2, 2022, and September 1, 2022. However, Plaintiff continues to falsely allege the charges against her were dismissed on August 30, 2022, rather than August 31, 2022. DE 50-1 para. 112. The Court may take judicial notice of the correct date of dismissal. Exhibit A. Further, Plaintiff is in possession of information showing that Harris County released her less than eight hours after the jail received the dismissal documentation. So, Plaintiff's wrongful detention claim was utter nonsense and brought in bad faith. Plaintiff is <u>knowingly</u> alleging an incorrect dismissal date.

16.     With respect to limitations, Plaintiff does not allege any wrongful conduct by <u>any</u> of the eight new Defendants after August 18, 2022. DE 50-1 para. 103. In fact the last specific event Plaintiff describes occurred on August 22, 2022. DE 50-1 para. 109. But, Plaintiff does not attribute that event to any of the eight new defendants. The date that limitations ran for each individual is two years from the date of the last alleged act or omission attributed to that individual. *Beckwith v. City of Houston*, 790 Fed. Appx. 568, 572-73 (5th Cir. 2019).

17.     Plaintiff's claims against the eight new defendants <u>do not</u> relate back to the claims against the John Does. The case law from the 5th Circuit is crystal clear on this issue. Fed. R. Civ. P. 15; *Jacobsen v. Osborne*, 133 F.3d 315, 320-321 (5th Cir. 1998); *Winzer v. Kaufman Co.*, 916 F.3d 464, 470-471 (5th Cir. 2019); *Balle v. Nueces Co.*, 952 F.3d 552, 556-558 (5th Cir. 2017); *Waters v. City of Hearne,* 629 F.App'x. 606, 610 (5th Cir. 2015);*Clark v. Thompson*, 850 F.Appx. 203, 206-207 (5th Cir. 2021). Plaintiff failed to name the eight new defendants prior to the expiration of the statute of limitations for the claims against those defendants.

18.     The last act or omission Plaintiff attributes to any of the eight defendants occurred on August 18, 2022. DE 50-1 para. 103. The last specific actionable event Plaintiff describes occurred on August 22, 2022. DE 50-1 para. 109. Plaintiff sought leave to amend on August 29, 2024, more than two years after the events attributed to the eight new defendants.  These claims are barred.

19.     There is no basis to toll the statute of limitations for the claims asserted against the eight new defendants. Tex. Gov't Code §22.0035 covers tolling due to a natural disaster. The state legislature empowered the Texas Supreme Court to toll limitations if necessary. See, e.g., *First Emergency Order Regarding Covid*, 596 S.W.3d 265 (Tex. 2020). In response to Hurricane Beryl, the Texas Supreme Court did <u>not</u> extend the statute of limitations that applies to a §1983 claim. Exhibit B. The Court only extended deadlines for cases in the Justice Courts in a few counties. *Id.* Even if the Hurricane Beryl Emergency Order could be interpreted to extend the applicable statute of limitations, that extension expired on July 26, 2024—over a month before Plaintiff sought leave to file DE 50-1. So, limitations bars Plaintiff's claims.

20.     There is no basis to toll limitations in this case. Plaintiff has at least four lawyers in three different cities representing her in this case. Plaintiff had adequate opportunity to timely assert her claims. *See, e.g. Balle v. Nueces County*, 952 F.2d 552,558 (5th  Cir. 2017). Further, Plaintiff made roughly 37 pages of baseless allegations against non-existent John Does.  Compare DE 1 to DE 50-1. Plaintiff cannot assert she made good faith efforts to timely identify defendants under these facts.

21.     Since Plaintiff's allegations show she is not entitled to relief against the eight newly named defendants, Plaintiff has failed to state a claim and the claims should be dismissed with prejudice. *Jones v. Bock*, 549 U.S. 199, 215 (2007). The amendment is futile, and these claims needlessly complicate this case.

22.	**Insufficient Allegations.** Plaintiff makes several "factual" allegations in support of her claims against Movants.  The allegations are deficient as a matter of law.

23.	Plaintiff alleges the jail held an average 10,000 people a day in 2022.  DE 50-1 p. 6.

24.	Plaintiff alleges there were 28 deaths in the Harris County Jail in 2022. DE 50-1 p. 3 and 11.  Plaintiff does not distinguish between natural deaths, medical issues, accidents, suicides, assaults, etc. Further, Plaintiff does not allege <u>when</u> in 2022 the deaths occurred. Deaths in December provide virtually no notice of an issue that could be corrected in June – August 2022, the time Plaintiff was incarcerated. 28 inmate deaths are 0.31% of 9,006 (average daily inmate population),  0.28% of 10,000 (Plaintiff's alleged daily inmate population) and 0.03% of 90,000 (conservative calculation of the total number of inmates that are housed in the Harris County Jail in any given year). Thus, Plaintiff's statistics do not support her claims. In fact, they disprove Plaintiff's claims.  Given the number of inmates involved, very few die in custody—far less than the U.S. 2022 average death rate of 832.8 deaths per 100,000 standard population. Given the CDC statistics, one would <u>expect</u> at least 83 deaths with a jail population of 10,000.  Twenty-eight deaths in 2022 with a population of 90,000 (or 10,000 or 9,006) show the living conditions are better, the medical care is better, and the risk of serious injury is lower <u>in</u> the Harris County Jail than the risk of injury on the outside. If the jail is as unsafe as Plaintiff claims, the death rate in the jail should far exceed the average death rate in the general population.

25.	Plaintiff cites statistics alleging assaults, claiming the "use of force leading to bodily injury" have increased. DE 50-1 p. 3 and 9. These statistics are only relevant if the use of force is illegal or excessive. The use of force in a jail is not illegal *per se*. And, in fact, force can lawfully be used to protect inmates, protect guards, and maintain order.  See, e.g., *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Plaintiff does not allege the use of illegal force increased.

26.     Plaintiff further alleges that over 50 civil rights complaints were filed "over the past decade." DE 50-1 p. 3. See also *Id.* at 10 [emphasis added].  First, a civil rights suit is only an allegation. Plaintiff does not allege Movants were liable in these cases.  The existence of other lawsuits is not sufficient to support Plaintiff's civil rights claim. This is merely an allegation that someone else alleged something. And at least a portion of the allegations do not even cover Sheriff Gonzalez's administration. He took office on January 1, 2017.

27.     Further, 52 civil rights complaints are 0.57% of 9,006 (average daily inmate population), 0.52% of 10,000 (Plaintiff's alleged daily inmate population) and 0.057% of 90,000 (conservative calculation of the total number of inmates that are housed in the Harris County Jail in any given year). So very few inmates filed civil rights complaints given that the number of inmates housed in the jail over the course of decade would be several hundred thousand. The numbers are worse for Plaintiff if the calculation were based solely on lawsuits with claims similar to Plaintiff's suit. Plaintiff appears to allege there are 25 individuals that asserted excessive force claims in the last 10 years.  DE 50-1 p. 28-29.

28.     Further, Plaintiff only cites one other incident involving the alleged mistreatment of another pregnant woman. DE 50-1 p. 4 and 11.Thus, Plaintiff's statistics do not support her claims. And, in fact, show the exact opposite of what Plaintiff should allege to support a *Monell* claim.

29.     Plaintiff makes conclusory allegations regarding the dangers of overcrowding and fails to tie this in with her claims. DE 50-1 p.7. Plaintiff never alleges that any of the units where she was housed were overcrowded. Further, the Court can take judicial notice that there are 36 municipalities and eight constables in Harris County. The State of Texas has law enforcement offices in Harris County. Sheriff Gonzalez has no authority over these entities and cannot prevent

them from making arrests. Thus, Sheriff Gonzalez cannot control the number of people that are processed through the system.

30.     Plaintiff attempts to rely on action by the 5th Circuit Court of Appeals in 1990s and findings by the Department of Justice in 2009. DE 50-1 p. 7. This information is decades old. Sheriff Gonzalez—the policymaker at issue in this suit—did not even take office until January 2017. The fact that Plaintiff has to go back roughly 30 years to find supporting information is telling.  The only reasonable inference from this allegation is that those issues were resolved by 2022.

31.     Plaintiff  refers to 120 incidents of "misuse of force and other abuses of authority" from 2009 to 2015—a six year period that ended before Sheriff Gonzalez took office. DE 50-1 p. 8. Again, given Plaintiff's own allegations on the jail population, this is statistically negligible.  These incidents ended over seven years before Plaintiff's alleged injuries and over two years before Sheriff Gonzalez  took office. The allegation is vague at best. "Abuse of authority" is ambiguous and could be something very minor to something very serious and have no bearing on Plaintiff's claims at all. It is a conclusory and vague allegation.

32.     Plaintiff alleges eight officers were fired and/or indicted in 2016. DE 50-1 p. 8. Again, this is before Sheriff Gonzalez took office. Further, an indictment is not a finding. It is an accusation. There are roughly 2600 employees in the Criminal Justice Command.  Eight officers are only 0.3% of the total employees. This statistic does not show a systemic problem. Rather it shows the system works. Finally, the fact that officers were indicted and/or disciplined shows that the Movants act when misconduct occurs.  This is the exact opposite of what Plaintiff needs to allege to show a pattern, practice, policy, custom or deliberate indifference.

33.     Plaintiff alleges Harris County paid a detainee $400,000 in 2016  for injuries resulting from living conditions. DE 50-1 p.8. This coupled with Plaintiff's allegations regarding living

conditions (DE 50-1 p. 2), if true, shows only two incidents that occurred over six years. Plaintiff further alleges 37 jail employees were disciplined or faced criminal charges arising out of the 2016 incident. Again, that shows the Movants act when misconduct comes to light. These allegations are the exact opposite of what Plaintiff should allege to show a pattern, practice, policy, custom or deliberate indifference. In addition, this alleged malfeasance occurred <u>before</u> Sheriff Gonzalez took office.

34.     Plaintiff alleges a guard was "accused" of rape in 2018 and another guard was "accused" of encouraging an assault. DE 50-1 p. 9.  Allegations of another allegation are insufficient. Other allegations are not facts. There is no support that these events actually occurred or that there was a finding against those guards or the Movants. Further, the accusations show dissimilar, isolated, and unrelated incidents.

35.     Plaintiff refers to 14 other suits that allege a failure to protect inmates and 22 suits that allege inadequate medical care/mental health care for inmates that were filed over a decade.  DE 50-1 p. 11. Plaintiff does not allege there were findings against the Movants in any of these suits. Unproven allegations in another lawsuit are not "facts" sufficient to state a claim. And, given the statistics referenced above, this is a very small number of suits given an inmate population of several hundred thousand over the course of a decade. Also, these allegations cover a period of time before Sheriff Gonzalez was the policymaker for the Harris County Jail. Plaintiff fails to allege what occurred during Sheriff Gonzalez's administration.

36.     Plaintiff makes multiple conclusory allegations regarding the conditions in the jail and failure to comply with the Texas Commission on Jail Standards. DE 50-1 p. 11-13. But Plaintiff fails to allege how any specific condition or failure caused Plaintiff's injuries or damages. Further,

Plaintiff does not allege whether these incidents occurred while Sheriff Gonzalez was the policymaker.

37.     Plaintiff refers to three settlements totaling approximately $4.5 million. This is out of an alleged 52 cases filed over a decade.  DE 50-1 p. 13.   Assuming a settlement is a sufficient allegation to support a *Monell* claim—it is three settlements over the course of 10 years when hundreds of thousands of inmates were housed on the Harris County Jail.  The allegation also indicates that only three out of the 52 lawsuits had any merit. This does not show a systemic problem. Further, Plaintiff does not allege whether these settlements arose out of incidents that occurred while Sheriff Gonzalez was the policymaker.

38.     Plaintiff alleges she was booked into the jail on June 2, 2022.  DE 50-1 p. 13. Plaintiff alleges the living conditions in the jail were inhumane and violated her constitutional rights.  DE 50-1 p. 1 and 14. But, she also admits the jail staff responded to her or her mother's complaints. DE 50-1 p. 15. And Plaintiff was moved to a different cell by June 16, 2022.  *Id.*  So, her complaint was resolved, at the latest, in 14 days. Note that Plaintiff does not allege <u>when</u> she or her mother voiced complaints in relation to Movants' response. So, there is basis to infer an inadequate or untimely response. In addition, she does not allege any injury or damages resulting from the living conditions. These allegations are insufficient under the heightened pleading standard.

39.     Plaintiff also complains that the detention officers failed to protect her. Yet her allegations show that when she reported an assault, she was moved to a different unit multiple times--including solitary confinement. Strangely, after requesting to be in a cell by herself multiple times (DE 50-1 p. 22), Plaintiff now complains that she was in a cell by herself.

40.     It strains credulity to suggest the Movants violated Plaintiff's civil rights by putting her in a cell by herself when she requested it and given the history of assaults Plaintiff alleges. Further,

Plaintiff does not allege any facts that implicate *Monell* liability. There is no possible way that removing an inmate from a housing unit where she was assaulted can be deliberate indifference.

41.     Plaintiff's allegations regarding inadequate medical care and mental health care are conclusory. Further, the Harris Health (the County Hospital District) is responsible for the medical and mental health care in the jail.  She does not allege sufficient facts that explain how her medical care or mental health care was inadequate. In fact, her allegations are replete with numerous interactions with the medical and mental health staff. Plaintiff makes no allegation that the Movants interfered with or dictated her medical or mental health care. In many of her allegations, she does not allege that she requested medical care. In reality, the allegations show that Movants facilitated medical and mental health care.

42.     Plaintiff's allegations regarding her suicidal ideations and attempted suicide show that she received adequate care, and the jail staff actually prevented her suicide. In addition, she does not appear to allege any injury or damages resulting from inadequate medical care. Further, Plaintiff does not allege any facts that implicate the Movants' *Monell* liability for inadequate medical care. Again, Harris Health, the County Hospital District, manages inmate medical care. Further, detention personnel do not have access to inmate medical records.

43.     Plaintiff makes multiple allegations based on "information and belief" related to her claims for failure to protect her, encouraging inmates to assault her, lack of medical/mental health care, and the failure to investigate her sexual assault allegations. DE 50-1 p. 19, 20, 23 and 24. These allegations are conclusory.  *Big Thirst, Inc. v. Donoho*, 657 F.Supp.3d 914, 922 ( W.D. Tex. 2023). A civil rights claim cannot be predicated simply on "information and belief". It is a conclusory allegation by definition. Plaintiff is admitting she has no factual allegations and is simply

speculating that something happened. Further these allegations do not support liability for any defendant.

44.     Plaintiff's reference to statistics and events the occurred prior to Sheriff Gonzalez taking office are inappropriate and cannot be the basis for *Monell* liability based on Sheriff Gonzalez's administration. The case law requires action or inaction by "the policymaker" to impose liability. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). Plaintiff named Sheriff Gonzalez as a party and identifies <u>only</u> Sheriff Gonzalez as the policymaker. Thus, Plaintiff's allegations are limited to Sheriff Gonzalez's administration. Therefore, any reference to anything that occurred under a previous policymaker is not a sufficient allegation to support a municipal liability claim against Harris County with Sheriff Gonzalez as the final policymaker.

45.     The allegations regarding other incidents in DE 50-1 paragraphs 9, 10, 35-40, 45, and 50, are the only alleged incidents that clearly occurred within Sheriff Gonzalez's administration. And some of those occurred <u>after </u>the incidents at issue in this lawsuit. The incidents that occurred before January 1, 2017 (the date Sheriff Gonzalez took office) and after September 1, 2022 (the date of Plaintiff's release) cannot be used to support *Monell* liability in <u>this</u> case. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). The policymaker cannot be liable for someone else's policies.

46.     Allegations of events that occur after the incidents at issue in this suit cannot be used to show a policymaker had notice. Likewise, events that occur before a policymaker takes office cannot be used to show a policymaker had notice that <u>his</u> policies were somehow deficient.

47.     The incidents Plaintiff alleges that clearly occurred after Sheriff Gonzalez took office and before Plaintiff's release (January 1, 2017 – September 1, 2022) consist of:

a. In May 2022, guards allegedly ignored a  mentally ill pregnant woman, and she gave birth in her cell. DE 50-1 para. 31.

b. In 2022 the jail detained over 10,000 people every day.

c. In 2018, a woman <u>accused</u> a guard of rape and threats of rape. DE 50-1 para. 35.

d. In 2021, an officer was <u>accused</u> encouraging and watching prisoners attack another prisoner. DE 50-1 para. 36.

e. 28 people died in the Harris County Jail in 2022. DE 50-1 para. 45.

f. Plaintiff placed in uninhabitable housing on 4L in June 2022. DE 50-1 para. 59-68.

g. Assault by Detention Officers in hallway in early June 2022. DE 50-1 para. 69-72.

h. Delayed/denied medical care in June 2022. DE 50-1 para. 73-84. et. seq.

i. Assault by inmates on 4H in late June 2022. DE 50-1 para. 86.

j. Assault by inmates on 4F in early July 2022. DE 50-1 para. 87.

k. Sexual Assault by inmates on 4C in mid-July 2022. DE 50-1 para. 88.

l. Assault by inmates on 4C in mid-July 2022. DE 50-1 para. 90.

m. Assault by a Detention Officer in mid-July 2022. DE 50-1 para. 91.

n. Second assault by inmates in mid-July 2022. DE 50-1 para. 97

o. Assault by inmates on 4H in August 2022. DE 50-1 para. 103.

p. Solitary Confinement and attempted suicide in late August 2022. DE 50-1 para. 105-111.

48.    Movants have already addressed Plaintiff's confounding statistical allegations that disprove her case. Plaintiff further alleges that one prior incident of a pregnant woman not receiving medical care, one allegation (not finding) of rape against a guard, and one allegation (not finding) of a guard failing to protect an inmate shows Movants were deliberately indifferent; thus causing Plaintiff's injuries. These allegations are not sufficient.

49.     First, Plaintiff's allegations show that Movants acted when Movants were aware of an assault, sexual assault, or poor living conditions. In fact, her own allegations show that when Plaintiff reported something, Movants reacted. E.g. DE 50-1 paragraphs 57, 65, 66, 78, 89, 98. Plaintiff's own allegations show she was moved to different housing units several times. Plaintiff's own allegations are replete with examples of medical care she received. Plaintiff's own allegations show that when her mother actually <u>reported</u> her concerns (i.e. through Inmate Care Concerns), movants acted. Further, Plaintiff never alleges she reported (and, in fact, she did not report) assaults by Defendants Martinez and Rada. It is telling that Plaintiff did not name a single defendant in their individual capacity with any policymaking, or even supervisory, authority.

50.     Plaintiff's allegations are woefully inadequate and conclusory to assert a *Monell* claim. Plaintiff pled no <u>facts</u> that indicate Movants have *Monell* liability. Her allegations simply repeat unsubstantiated allegations by other Plaintiffs in other lawsuits—not facts. In addition, the facts Plaintiff did plead vitiate her *Monell* claims. The statistics Plaintiff's cite show that the Movants would have no notice of a systemic problem in the jail. The allegations that multiple officers were disciplined and prosecuted over an extended period of time utterly destroys Plaintiff's *Monell* claims since the Officers were disciplined and prosecuted for malfeasance. Plaintiff's attempt to assert a *Monell* claim under the facts as alleged by Plaintiff turns the holding of *Monell* on its head.

51.     **Deliberate Indifference & Failure to Train, Supervise and Discipline.** As demonstrated above, Plaintiff alleges there is a history of jail personnel being disciplined and prosecuted for misconduct. So, the Movants cannot be deliberately indifferent to excessive force. Further, Movants could not establish a custom, pattern, practice, or policy of allowing excessive force based on Plaintiff's allegations. In fact, the only reasonable inference taken from Plaintiff's allegations is that the Movant's show deliberate concern. And, that the Movants prohibit and punish the

misconduct Plaintiff describes. Further, Plaintiff primarily relies on allegations of incidents that occurred <u>before</u> Sheriff Gonzalez took office. A policy maker must have actual or constructive knowledge that his policies are the moving force behind a constitutional violation. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). In this case, Plaintiff attempts to saddle Sheriff Gonzalez with incidents that pre-date his policymaking authority. Sheriff Gonzalez cannot be charged with knowledge of incidents from 2009 as Plaintiff alleges, for example. Sheriff Gonzalez's policies cannot be the driving force behind any constitutional violation that predates his administration. *Id.* Further, any event that occurred after the events alleged by Plaintiff would not put Sheriff Gonzalez on notice of the risk of violating Plaintiff's rights. *Id.* Plaintiff's allegations are not consistent with the requirements of *Monell* and its progeny.

52.     Under § 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability. *Thompson v. Upshur Cnty.,* 245 F.3d 447, 459 (5th Cir.2001). The plaintiff must present evidence that the municipality is itself legally responsible for the challenged conduct. *Doe v Edgewood Independent School District*, 964 F3d 351, 364–65 (5th Cir 2020). This is generally established by proving that (i) an official policy (ii) promulgated by a municipal policymaker (iii) was the "moving force" behind the violation of a constitutional right. *Piotrowski v City of Houston*, 237 F3d 567, 578 (5th Cir 2001) (citations omitted). *See also*, *Aviles v. Saldivar*, No. 4:22-CV-03571, 2023 WL 5487668, at *3 (S.D. Tex. Aug. 23, 2023).

53.     Plaintiff only makes conclusory allegations on failure to train, supervise and discipline. As a result, this court does not need to look further that its own opinion in *Taylor v. Hartley*, 488 F. Supp. 3d 517, 535–40 (S.D. Tex. 2020). As this court noted, "[t]he Supreme Court observes, 'A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on

a failure to train.'" *Taylor,* 488 F. Supp. 3d at 535, citing to *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To state such a claim, a plaintiff must plead that:

    a. the training procedures of the policymaker were inadequate;

    b. the policymaker was deliberately indifferent in adopting the training policy; and

    c. the inadequate training policy directly caused the plaintiff's injury.

*Conner v. Travis County*, 209 F.3d 794, 796 (5th Cir. 2000), quoting *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).

54.    Municipal liability doesn't attach merely because "a particular officer may be unsatisfactorily trained" or "an otherwise sound program has occasionally been negligently administered." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989). The Fifth Circuit directs with the first element that the focus must be on the adequacy of the training program in relation to the tasks the particular officer must perform. *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998), quoting *City of Canton,* 489 U.S. at 390. To survive a motion to dismiss, the plaintiff must allege with specificity how the training program is defective. *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005).

55.    Plaintiff neither alleges specific facts about the training protocols in Harris County nor describes any deficiencies in the program in light of defendant officers' duties. *Snyder*, 142 F.3d at 798. Since Plaintiff has not identified a specific training program or shown how it is inadequate, her allegations do not show the training caused her injury.

56.    Plaintiff also does not properly plead deliberate indifference. This is "a stringent standard of fault," one "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61, quoting *Board of County Commissioners of Bryan County Oklahoma v. Brown*, 520 U.S. 397, 410 (1997). "Thus, when city policymakers are on actual or

constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick*, 563 U.S. at 61. A municipality's deliberate indifference requires a plaintiff to allege a pattern of similar constitutional violations by employees. *Id.* at 62. Plaintiff's allegations show a lack of a pattern of constitutional violations.

57.    A plaintiff must generally show that, given the duties assigned to specific officers or employees, "the need for more or different training is obvious, and the inadequacy is likely to result in the violation of constitutional rights." *City of Canton*, 489 U.S. at 390. Plaintiff alleges no pattern of similar violations by other allegedly untrained employees, which is "ordinarily necessary" to establish the requisite deliberate indifference to state a failure-to-train claim. *Connick*, 563 U.S. at 62. Her examples of unrelated inmate injuries are not enough to put any policymaker on notice that its training was deficient. *Connick*, 563 U.S. at 62–63.

58.    Plaintiff alleges failure to supervise as the basis for liability and must show: (1) failure to supervise the officers involved; (2) a causal link between the failure to supervise and the alleged violation of the plaintiff's rights; and (3) the failure to supervise amounted to deliberate indifference to the plaintiff's constitutional rights. *Thompson,* 245 F.3d at 459. Proof of a single instance, rather than a pattern of similar violations, normally will not sustain a lack of supervision claim. *Cozzo v. Tangipahoa Parish Council–Pres. Gov't,* 279 F.3d 273, 286–87 (5th Cir.2002). To be entitled to the "single act" exception to the general rule, applicable only in certain extreme circumstances, a plaintiff must show that the "highly predictable" consequence of the failure to supervise would result in the specific injury suffered and that the failure to supervise represented the "moving force" behind the constitutional violation. *Roberts v. City of Shreveport,* 397 F.3d 287, 295 (5th Cir.2005).

59.     **Policy, Pattern, Practice & Custom.** "[U]nder §1983, local governments are responsible only for 'their own illegal acts.'" *Connick v. Thompson*, 560 U.S. 51, 60 (2011) (emphasis added); *see also Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978). The alleged constitutional violations must be "directly attributable to the [governmental entity] through some sort of official action or imprimatur; isolated actions by [governmental] employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010). As a result, governmental entities cannot be held liable on a *respondeat superior* basis. I.e., Harris County is not vicariously liable for its employees' actions, even if unconstitutional. *Connick*, 560 U.S. at 60.

60.     Plaintiff identifies multiple unrelated events as evidence of a pattern or practice over the course of a decade.  Some events have no factual similarity.  A custom may give rise to municipal liability only if the unlawful practice is "so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* 563 U.S. 51, 61 (2011). Plaintiff's own allegations show there is no policy, pattern, practice or custom. And her allegations reference incidents that occurred before Sheriff Gonzalez took office.

61.     Critically, a pattern requires "similarity, specificity, and sufficiently numerous prior incidents." *Id.* "Showing a pervasive pattern is a heavy burden." *Sanchez v. Young Cnty.,* 956 F.3d 785, 793 (5th Cir. 2020); *Peterson v. City of Fort Worth,* 588 F.3d 838, 851 n.4 (5th Cir. 2009) (finding no pattern even though there were 27 complaints of excessive force over four years against police officers).  Plaintiff identified only 52 civil rights suits (not judgments) that occurred <u>over a decade</u>. This includes a period of time before Sheriff Gonzalez was the policymaker. There is no allegation that the same inmates and deputies were involved. Plaintiff's own allegations show there

is no pattern. Plaintiff's allegations are inconsistent, contradictory and fail to demonstrate a policy, pervasive pattern, or practice.

62.     Plaintiff cannot establish *Monell* liability for failure to protect based on the existence of other claims made against Harris County.  Again, as demonstrated above, the statistics and facts Plaintiff cited, show a very low number of lawsuits, injuries, and deaths for the Harris County Jail over an extended time period, a significant portion of which Sheriff Gonzalez was not in office. There is certainly not enough information to put Movants on notice of a systemic issue.

63.     Plaintiff's allegations regarding the conditions of confinement also fail. Her own allegations show that when she made complaints, the jail staff reacted.  Plaintiff was moved multiple times. Further, she does not specify any injuries or damages resulting from the living conditions. Tellingly, Plaintiff makes no allegations about the temporal relationship between complaints and a response. This is not sufficient to establish *Monell* liability.

64.     Plaintiff's allegations regarding solitary confinement are puzzling. She alleges she suffered multiple assaults. She admits in the complaint that she requested a cell to herself.  Further, her own allegations show that the jail staff proactively monitored her and prevented her from causing serious self-injury. There can be no *Monell* liability under these facts.

65.     **Duplicative Claims/Parties.** Plaintiff has sued both Harris County and Sheriff Gonzalez in his official capacity. These claims are duplicative.  It is well established that a claim against a government official in his official capacity is nothing more than a claim against the governmental entity. See, e.g., *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985). Therefore, the claims against Sheriff Gonzalez are duplicative of the claims against Harris County and should be dismissed with prejudice as a matter of law.

## CONCLUSION

Plaintiff has not alleged sufficient facts to invoke the jurisdiction of this Court. The facts Plaintiff has alleged would not impose liability on the Harris County or Sheriff Gonzalez. Movants request that Plaintiff's claims be dismissed with prejudice.

Date: September 20, 2024.

Respectfully submitted,
**CHRISTIAN D. MENEFEE**
HARRIS COUNTY ATTORNEY
**JONATHAN G. C. FOMBONNE**
DEPUTY COUNTY ATTORNEY AND FIRST
ASSISTANT
**NATALIE G. DELUCA**
MANAGING COUNSEL,
DEFENSIVE LITIGATION, EMPLOYMENT, & REAL
ESTATE DIVISIONS
Respectfully submitted,

By: */s/ Frank Ford*

**FRANK FORD**
Senior Assistant County Attorney
ATTORNEY-IN-CHARGE
Federal ID No. 565385
State Bar No. 24012642
Phone: 713-274-5166 (direct)
frank.ford@harriscountytx.gov
**RACHEL FRASER**
Senior Assistant County Attorney
ATTORNEY TO BE NOTICED
State Bar No. 24079725
Fed Bar No. 4067195
Tel: (713) 274-5383 (direct)
rachel.fraser@harriscountytx.gov
**OFFICE OF THE HARRIS COUNTY ATTORNEY**
Harris County Attorney's Office
1019 Congress
Houston, Texas 77002
**ATTORNEYS FOR DEFENDANTS
HARRIS COUNTY AND SHERIFF ED
GONZALEZ**

## CERTIFICATE OF SERVICE

I certify that, pursuant to Federal Rules of Civil Procedure, a true copy of the instrument to which this Certificate is attached was duly served upon each party to this cause on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following:

Karley T. Buckley
DLA Piper LLP (US) Texas
Bar No. 24123596
845 Texas Avenue, Suite 3800
Houston, Texas 77002
(713) 425-8421
karley.buckley@us.dlapiper.com

Miriam R. Nemeth (DC Bar #1028529)*
D Dangaran (BBO #708195)*
RIGHTS BEHIND BARS
416 Florida Avenue, NW #26152
Washington, D.C. 20001
(202) 455-4399
miriam@rightsbehindbars.org
d@rightsbehindbars.org

David H. Bamberger
DLA Piper LLP (US)
DC Bar #362285*
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4500
david.bamberger@us.dlapiper.com

John C. Canoni
DLA Piper LLP (US)
Texas Bar No. 24117335*
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
(214) 743-4500
john.canoni@us.dlapiper.com

Gregory Burnett
State Bar No. 24057785
Fed. Bar No. 3785139
Tel: (713) 274-5224 (direct)
gregory.burnett@harriscountytx.gov
Charles David Shaw, Jr.
State Bar No. 24085951
Fed. Bar No. 3193599
Tel.: (713) 274-3068 (direct)
charles.shaw@harriscountytx.gov
Office of the Harris County Attorney
1019 Congress Houston, Texas 77002

*/s/ Frank Ford*
FRANK FORD