## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Mikayla Cheyenne Savage, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| Harris County, Texas; Sheriff Ed Gonzales, | § | **CIVIL ACTION NO. 4:24-cv-00666** |
| in his official capacity; Detention Officer | § | |
| Arnoldo Martinez, in his individual capacity; | § | |
| Detention Officer Andrew Rada, in his | § | |
| individual capacity; Administrative | § | |
| Operations Officer  Danika Mathews, in her | § | |
| individual capacity;  Detention Officer | § | |
| Ozalynn Lozano, in his individual capacity; | § | |
| Detention Officer Trucell Lagarde, in her | § | |
| individual capacity; Detention Officer Taylor | § | |
| Hodges, in his individual capacity; Detention | § | |
| Officer Gloria Ezeoke, in her individual | § | |
| capacity; Law Enforcement Officer Michael | § | |
| Thomas, in his individual capacity; Law | § | |
| Enforcement Officer Lakisha Cheatham, in | § | |
| her individual capacity; and Detention | § | |
| Officer Marilyn John, her individual | § | |
| capacity, | § | |
| Defendants. | § | |

## PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS OF
## DEFENDANTS ARNOLDO MARTINEZ AND ANDREW RADA

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    NATURE OF THE CASE AND STAGE OF PROCEEDINGS ...................................... 2

III.   STATEMENT OF THE ISSUE ............................................................................. 2

IV.   SUMMARY OF ARGUMENT .............................................................................. 2

V.    FACTUAL ALLEGATIONS ................................................................................ 3

VI.   STANDARD OF REVIEW .................................................................................. 4

VII.  ARGUMENT .................................................................................................... 5

     A.    PLAINTIFF SUFFICIENTLY PLEADED AN EXCESSIVE FORCE
           CLAIM .................................................................................................. 5

           1.    Defendant Martinez's Excessive Force ...................................... 6

           2.    Defendant Rada's Excessive Force ............................................ 9

     B.    PLAINTIFF SUFFICIENTLY PLEADED A RETALIATION CLAIM ............ 10

     C.    PLAINTIFF SUFFICIENTLY PLEADED A FAILURE TO PROTECT
           CLAIM ................................................................................................ 12

     D.    PLAINTIFF HAS SUFFICIENTLY PLEADED STATE LAW CLAIMS
           AGAINST MARTINEZ .......................................................................... 14

     E.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY .......... 17

           1.    Excessive Force ...................................................................... 18

           2.    Retaliation ............................................................................. 19

           3.    Failure to Protect ................................................................... 20

VIII. CONCLUSION ............................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adames v. Perez*,
   331 F.3d 508 (5th Cir. 2003) ...............................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................5

*Austin v. City of Pasadena*,
   74 F.4th 312 (5th Cir. 2023) ...............................................................5, 6

*Bailey v. Ramos*,
   657 F. Supp. 3d 927 (W.D. Tex. 2023)...............................................7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................5

*Bell v. Wolfish*,
   441 U.S. 520 (1979)................................................................................6

*Butts v. Martin*,
   877 F.3d 571 (5th Cir. 2017) ...............................................................19

*Cardona v. Taylor*,
   828 F. App'x 198 (5th Cir. 2020) ...................................................12, 13

*Caver v. Clayton*,
   618 S.W.3d 895 (Tex. Ct. App. 2021) ................................................14

*City of Houston v. Esparza*,
   369 S.W.3d 238 (Tex. App. 2011) ......................................................16

*Coons v. Lain*,
   277 F. App'x 467 (5th Cir. 2008) .......................................................17

*Cry v. Dilliard*,
   Case No. 3:15cv318, 2017 WL 2172944 (S.D. Miss. May 16, 2017)..............................10, 18

*Fairchild v. Coryell County*,
   40 F.4th 359 (5th Cir. 2022) ...............................................................8, 9

*Farmer v. Brennan*,
   511 U.S. 825 (1994)........................................................................12, 20

*Fort Worth Osteopathic Hosp., Inc. v. Reese,*
    148 S.W.3d 94 (Tex. 2004)................................................................15

*Garza v. Harrison,*
    574 S.W.3d 389 (Tex. 2019)..............................................................16

*Hope v. Pelzer,*
    536 U.S. 730 (2002).............................................................17, 18, 19

*Hudson v. McMillian,*
    503 U.S. 1 (1992)..............................................................................7, 9

*Kingsley v. Hendrickson,*
    576 U.S. 389 (2015) .................................................................. *passim*

*Lindquist v. City of Pasadena,*
    525 F.3d 383 (5th Cir. 2008) ..............................................................4

*Longoria v. Texas,*
    473 F.3d 586 (5th Cir. 2006) ............................................................12

*McKinney v. Painter,*
    Case No. 17-CV-067, 2017 WL 11725575 (W.D. Tex. Sept. 11, 2017)..................7

*Montoya v. FedEx Ground Package Sys., Inc.,*
    614 F.3d 145 (5th Cir. 2010) ..............................................................5

*Quintanilla v. Araiza,*
    No. SA-20-CV-00927-XR, 2021 WL 2019204 (W.D. Tex. May 20, 2021) ...............5, 7, 9, 10

*Ramirez v. Martinez,*
    716 F.3d 369 (5th Cir. 2013) ............................................................16

*Saucier v. Katz,*
    533 U.S. 194 (2001)..........................................................................17

*Smith v. Dunbar,*
    No. 6:22cv442, 2024 WL 1228986 (E.D. Tex. Feb. 27, 2024) ................13, 17, 18

*T.L. v. Cook Children's Med. Ctr.,*
    607 S.W.3d 9 (Tex. App.—Fort Worth 2020, pet. denied) ....................15

*Telthorster v. Tennell,*
    92 S.W.3d 457 (Tex. 2002)................................................................16

*Westmoreland v. Butler County,*
    29 F.4th 721 (6th Cir. 2022) .............................................................12

*Williams v. Bramer*,
  180 F.3d 699 (5th Cir. 1999) .................................................7

*Williams v. Luna*,
  909 F.2d 121 (5th Cir. 1990) ................................................10

*Winslow v. Harris County*,
  No. H-07-767, 2009 U.S. Dist. LEXIS 143825 (S.D. Tex. June, 8 2009)............12

*Witty v. American Gen. Capital Distribs., Inc.*,
  727 S.W.2d 503 (Tex. 1987)................................................15

*Woods v. Smith*,
  60 F.3d 1161 (5th Cir. 1995) .........................................10, 19

**Rules and Statutes**

42 U.S.C § 1983...................................................................2, 10

Fed. R. Civ. P. 12(b)(6)..........................................................1, 4

Tex. Civ. Prac. & Rem. Code Ann. §§ 71.001 ...................................15

2003 Tex. Gen. Laws 2607, 2608 ................................................15

Texas Civil Practice and Remedies Code Annotated §§ 71.002, 71.009 .....................14

Texas Torts Claim Act Section 101.106............................................15

Texas Wrongful Death Act .........................................................15

U.S. Constitution....................................................................2

U.S. Const. amend. I .......................................................1, 10, 11, 19

U.S. Const. amend. VIII............................................................12

U.S. Const. amend. XIV ...................................................... *passim*

**Other Authorities**

Act of June 20, 2003, 78th Leg., R.S., ch. 822, §§ 1.01–.02 ......................15

# I.    INTRODUCTION

Before the Court is a motion to dismiss filed by two individual officers, Defendants Arnoldo Martinez and Andrew Rada ("Defendants").  In her Complaint, Dkt. 52, Plaintiff Mikayla Savage alleges that these officers engaged in excessive force while she was pregnant, which caused her to lose her fetus in a spontaneous abortion.  Separately, Defendant Martinez egregiously, viciously attacked Ms. Savage and bit her on the neck, after failing to intervene when he observed her being brutally assaulted by other prisoners.  Contrary to Defendants' assertions, the allegations in the Complaint sufficiently detail Defendants' use of excessive force and the injuries Ms. Savage suffered as a result.  Under binding precedent, these allegations are sufficient to state a claim for excessive force.  The Complaint also sufficiently sets forth a claim for retaliation against Defendant Martinez, detailing Plaintiff's First Amendment right to speak out about the unconstitutional treatment she received at HCJ and Officer Martinez's assault in response.

The Complaint contains robust well-pleaded facts and the reasonable inferences that this Court may draw therefrom, which this Court should determine withstands Defendants' Motion to Dismiss.  Plaintiff has alleged more than sufficient facts that Defendants committed the assault on Ms. Savage that ended her pregnancy.  Notably, neither Defendant denies that he was present for the assault that led to Ms. Savage's miscarriage nor that he purposefully or knowingly used excessive force towards Ms. Savage.  Defendant Martinez does not deny that he failed to intervene in a subsequent assault on Ms. Savage by other detainees.  Defendant Martinez also does not deny that he bit Ms. Savage and disparaged her as an act of retaliation.  Defendants offer nothing to refute or undermine these allegations, which must be taken as true and certainly meet the standard under Rule 12(b)(6).

In a final attempt to evade responsibility for their unconstitutional conduct and horrifying treatment of Ms. Savage, Defendants put forth threadbare and conclusory assertions that they are

entitled to immunity, but they have not come close to meeting their burden of proof. Defendant Martinez cannot show entitlement to Official Immunity for his objectively unreasonable behavior, and Plaintiff has adequately alleged facts showing that Defendants violated her Fourteenth Amendment rights, rendering Qualified Immunity unavailable.

Defendants' Motion to Dismiss Plaintiff's claims at the pleading stage, before fact discovery has been conducted, should be denied.

## II. NATURE OF THE CASE AND STAGE OF PROCEEDINGS

Plaintiff filed her Complaint on February 26, 2024. Dkt. 1. Plaintiff filed her amended complaint on September 5, 2024. Dkt. 52. In it, she names Martinez as a Defendant in six counts: Counts I (excessive force for the June assault), II (excessive force for the July assault), IV (retaliation during the July assault), V (failure to protect during the July assault), XI (assault and battery under Texas law), and XII (wrongful death of an unborn child under Texas law). She names Rada in only one claim, Count I (excessive force). Defendants filed their Motion to Dismiss each of these counts in the Amended Complaint on September 20, 2024. Dkt. 55.

## III. STATEMENT OF THE ISSUE

Whether Plaintiff pleaded facts in her Complaint sufficient to state claims against Defendants Martinez and Rada for violations of the U.S. Constitution under 42 U.S.C § 1983 and of Texas State Law.

## IV. SUMMARY OF ARGUMENT

Defendants' Motion to Dismiss fails to mount a valid challenge to Plaintiff's claims for excessive force, failure to protect, retaliation, and state law violations. Defendants Martinez and Rada also raise a cursory and unsupported immunity defense. Plaintiff has alleged that the horrors to which she was subjected at HCJ and the constitutional violations she suffered were the result of

these Defendants' behavior. These allegations are sufficient to state constitutional and tort claims against Defendants Martinez and Rada. Thus, Defendants' Motion should be denied.

## V.    FACTUAL ALLEGATIONS

Plaintiff Mikayla Savage was detained in the Harris County Jail from June 2, 2022, through September 1, 2022. Am. Compl., Dkt. 52, ¶ 16 (hereinafter, "Compl."). During that time, Ms. Savage —who was pregnant at the beginning of her incarceration—endured at least six separate physical and sexual assaults. ¶ 4; *see id.* ¶¶ 69–71, 85–92, 97, 103. HCJ detention officers were either the assailants or failed to intervene when they were in the vicinity of violent assaults by other prisoners. *Id.* ¶¶ 4, 69–71, 85–92, 97, 103.

On or around June 7, 2022, Ms. Savage was assaulted by Defendants Martinez and Rada in the fourth-floor hallway of HCJ during court call. *Id.* ¶¶ 69-71. Even though Ms. Savage —a petite woman barely over 100 pounds—lined up in compliance with these Defendants' instructions, Defendant Martinez violently yanked her out of line and swung her around like a ragdoll. *Id.* ¶ 70. In fear for the safety of her baby, she proclaimed to Defendant Martinez and everyone else present that she was pregnant. *Id.* Defendant Martinez callously responded that he did "not give a f*ck" about her or her "bastard" baby and proceeded to push and shove her into the wall of the hallway stomach-first, even though Ms. Savage did not resist before or during this assault. *Id.* ¶¶ 69-71. This incident occurred at the instigation of Defendant Rada, who encouraged Defendant Martinez to "grab" Ms. Savage for no apparent reason. *Id.* ¶ 69. When Ms. Savage received an ultrasound at a hospital a couple weeks later, following concerning symptoms that began shortly after Defendants Martinez and Rada's assault, the ultrasound showed that her pregnancy was no longer viable and that a spontaneous abortion had happened within a two-week period of the test, exactly when this assault took place. *Id.* ¶ 74. Ms. Savage was eventually given a surgical abortion to remove the no-longer-viable fetus. *Id.* ¶ 79.

On July 13, 2022, Ms. Savage was assaulted by other detainees and subsequently by Defendant Martinez in or around HCJ's fourth-floor A-Pod, a women's housing unit. *Id.* ¶¶ 90-94. She was jumped and beaten up by several women who were larger than her. *Id.* ¶ 90. Although Defendant Martinez had both the opportunity and responsibility to intervene, he did not. *Id.* Instead, he waited until the other women finished assaulting Ms. Savage and left her on the floor. *Id.* ¶¶ 90-91. He went over to the dizzy Ms. Savage, yelled at her to stand up, and quickly yanked her off the floor. *Id.* ¶ 91. Ms. Savage could barely open her eyes from the prisoners' assault. *Id.* Defendant Martinez handcuffed Ms. Savage and pushed her against the wall before dragging her petite frame to a holding cell. *Id.* In the holding cell, he banged her head against the wall and shoved his knee into her back, which caused Ms. Savage's knees to buckle and press into the metal bars on the holding cell bed. *Id.* Defendant Martinez bit Ms. Savage on her back and said, "now bitch, tell your mama I did that!" *Id.* This comment was a direct response to Ms. Savage's efforts to seek help from her mother and others for Martinez's first assault, which caused her spontaneous abortion, and other harms she suffered in the Jail. *Id.* ¶¶ 64, 68, 77. Defendant Martinez did not take Ms. Savage to the medical unit after these assaults, and she was not brought to the medical unit by any HCJ staff until the next day. *Id.* ¶ 94. She presented with multiple injuries including pain around her right ribs and right arm, contusions and bruises, limited range of motion in some fingers and her arm, a lesion under her right breast, and a bite mark to her back. *Id.* After the assault, Defendant Martinez regularly worked in the housing areas to which Ms. Savage was assigned, without any apparent reprimand from HCJ leadership for his actions. *Id.* ¶ 93.

## VI.    STANDARD OF REVIEW

When evaluating a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well-pleaded facts in the Complaint as true and views those facts in the light most favorable to the plaintiff. *See Lindquist v. City of Pasadena*, 525 F.3d 383, 386 (5th Cir. 2008).

Plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010).

## VII.    ARGUMENT

Plaintiff's Complaint describes in detail the ways in which Defendants Martinez and Rada violated her constitutional rights and caused physical injury to her and her baby and has readily met the pleading standard for this stage of the case. For all the reasons set forth below, Defendants' scattershot and threadbare Motion to Dismiss should be denied.

### A.    PLAINTIFF SUFFICIENTLY PLEADED AN EXCESSIVE FORCE CLAIM

Plaintiff has sufficiently pleaded an excessive force claim against Defendants Martinez and Rada. The right of pretrial detainees to be free from excessive force flows from the Due Process Clause of the Fourteenth Amendment. *Hare*, 74 F.3d at 639. The Fifth Circuit has held that "force against a pretrial detainee is 'excessive' and a violation of the Fourteenth Amendment when the force was objectively unreasonable." *Austin v. City of Pasadena*, 74 F.4th 312, 322 (5th Cir. 2023) (citing *Kingsley* 576 U.S. at 396–97). "Courts weigh the following factors to determine reasonableness: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* Regarding the second factor, a detainee must have suffered a form of injury that is more than *de minimis*. *Quintanilla v. Araiza*, No. SA-20-CV-00927-XR, 2021 WL 2019204, at *5 (W.D. Tex. May 20, 2021). The Fifth Circuit

"has made clear that force which is disproportionate to the need is unreasonable" and thus in violation of the Fourteenth Amendment. *Austin*, 74 F.4th at 323. A detainee can "prevail by showing that the actions are not rationally related to a legitimate nonpunitive governmental purpose or that the actions appear excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398 (quoting *Bell v. Wolfish*, 441 U.S. 520, 561 (1979)).

### 1. Defendant Martinez's Excessive Force

Plaintiff alleges in her Complaint that she was assaulted by Defendants Martinez and Rada in the fourth-floor hallway of HCJ. *See* Compl. ¶¶ 69-71. Taking the facts alleged in the Complaint as true, as the Court is required to do at this stage of the proceedings, Defendant Martinez had no basis upon which to apply any force against Ms. Savage. Ms. Savage "lined up in the hallway of the fourth floor in HCJ with other women heading to court, in compliance with the instructions of Defendant Officers A. Roda and A. Martinez." *Id.* ¶ 69. Despite following the guards' instructions—and thus posing no threat to either the guards or the other detainees—Officer Martinez "yanked Mikayla by the collar of her shirt and swung her around like a rag doll." *Id.* ¶ 70. His actions demonstrate an objectively unreasonable use of force under the first *Kingsley* factor. There was no obvious need for force, making Martinez's use of force irrational and abusive.

Scared for her safety and the safety of her baby, Ms. Savage told Defendant Martinez and everyone else in the hallway that she was pregnant. *Id.* He told her, "I do not give a f*ck about you or your bastard babies" and then proceeded to "shove[] Mikayla into the wall of the hallway stomach-first, calling her 'dumpster trash,' 'trailer trash,' 'bitch,' and 'stupid.'" *Id.* ¶ 71. Under the third *Kingsley* factor, Defendant Martinez made no effort to temper or limit the amount of force used against Ms. Savage despite her compliance with Defendants' instructions and the clear statement about her pregnancy. *Id.* ¶¶ 69-70. Additionally, the only security problem at issue was Defendant Martinez and Defendant Rada's attack on the petite Ms. Savage, who posed no security

threat under the fourth and fifth *Kingsley* factors.  *See also Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (finding that respondents' use of force was objectively unreasonable because no force was required).  Ms. Savage was not resisting; in fact, she was complying with guards' instructions to form the line for court call, the sixth *Kingsley* factor for this Court's consideration.  Compl. ¶ 69.

The second *Kingsley* factor, which considers the extent of Plaintiff's injury, warrants special attention.  Based on the allegations in the Complaint, this Court may reasonably infer that the loss of Ms. Savage's viable pregnancy was caused by the trauma to her abdomen inflicted during the assault by Martinez and Rada.  *See id.*  ¶ 75 ("Medical professionals agree that when a pregnant woman has experienced a trauma to her abdomen shortly before a miscarriage, it is appropriate and standard medical practice to attribute the miscarriage to that trauma, rather than to chance."); *see also id.* ¶ 115.  Ms. Savage thus suffered real injuries that are well beyond *de minimis* and certainly exceed the gravity of injury that the Fifth Circuit and Texas courts have previously held to surpass the pleading standard.  *See Quintanilla*, 2021 WL 2019204, at *5; *see also Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) (finding plaintiff's fleeting dizziness, coughing, and temporary loss of breath to equate to a more than *de minimis* injury when the force was motivated purely by malice); *Bailey v. Ramos*, 657 F. Supp. 3d 927, 953 (W.D. Tex. 2023) (holding that abrasions to plaintiff's wrist and knee, acute neck pain, and concussion, for which he was prescribed medication, surpassed the *de minimis* standard); *McKinney v. Painter*, Case No. 17-CV-067, 2017 WL 11725575, at *6 (W.D. Tex. Sept. 11, 2017) (finding a viable excessive force claim where a complaint alleged that an assault "left Plaintiff in a pool of blood, required hospitalization for a hole created in his ear, and required others to carry Plaintiff away").

Defendant Martinez does not dispute the Complaint's allegations that he was present, nor does he dispute that he randomly and viciously attacked this petite, pregnant woman in the fourth-

floor hallway. The law is clear that a violent assault, without provocation or any conceivable security threat, is objectively unreasonable. *See, e.g.*, *Fairchild v. Coryell County*, 40 F.4th 359, 366 (5th Cir. 2022) ("Page had not engaged in any physical resistance before Lovelady took her to the floor. So, it is hard to justify that use of force."). As supported by the facts alleged in the Complaint, Defendant Martinez used excessive force on Ms. Savage in the fourth-floor hallway during court call in violation of her Fourteenth Amendment rights.

Taking as true the facts alleged in the Complaint about the July assault, here too, Defendant Martinez had no basis upon which to apply any force against Ms. Savage. Ms. Savage was prone on the floor after a brutal assault, dizzy and unable to get up or even open her eyes; nonetheless, and even after having witnessed the assault without intervening, Martinez proceeded to violently yank Ms. Savage from the floor. Compl. ¶ 88. Martinez handcuffed her, pushed her against a wall and dragged her to a holding cell to continue the assault. *Id.* Martinez then banged Ms. Savage's head against the wall, shoved his knee into her back, forced Ms. Savage's knees against the metal bars on the holding cell bed, and bit her in the back. *Id.* Martinez's actions were objectively unreasonable, and thus a violation of Plaintiff's Fourteenth Amendment rights.

Given that the situation did not require any use of force, the amount of force used by Martinez during this July assault was grossly disproportionate. Ms. Savage's various injuries were serious and documented, and medical records demonstrate, concerningly, that she had elevated pulse levels for over nine hours after the assault. *Id.* ¶ 92. Ms. Savage has pleaded injuries meeting the second *Kingsley* factor. Ms. Savage's injuries to her ribs, right arm and fingers, back and under her right breast were more than *de minimis*. *See Williams,* 180 F.3d at 704; *Bailey*, 657 F. Supp. 3d at 953. In consideration of the third *Kingsley* factor, Martinez made no attempt to temper or limit the amount of force he used; in fact, he only got more aggressive over the course

of the assault and specifically once he had dragged her into the holding cell. Compl. ¶ 91. When considering the fourth and fifth *Kingsley* factors, it is clear that the security problem at issue was Defendant Martinez himself, who became a threat to Ms. Savage after she was assaulted by the other detainees. Last, Ms. Savage was not resisting, which is the sixth and final *Kingsley* factor to be considered.

Martinez does nothing to undermine the Complaint's allegations that he violently assaulted Ms. Savage in a fourth-floor holding cell. The law is clear that a violent assault, without provocation or any conceivable security threat, is objectively unreasonable. *See, e.g.*, *Fairchild*, 40 F.4th at 366. As set forth in the Complaint, Ms. Savage posed no threat, especially since Martinez had to yank Ms. Savage from the floor, where the other assailants left her. *See Hudson*, 503 U.S. at 5 (finding that respondents' use of force was objectively unreasonable because no force was required).

### 2. Defendant Rada's Excessive Force

By instigating Defendant Martinez's unreasonable use of force, Defendant Rada purposefully and knowingly caused Ms. Savage harm. The factors from *Quintanilla* fully support denial of Defendant Rada's Motion. From the perspective of a reasonable officer on the scene, Ms. Savage posed no threat. There was no need for force since Ms. Savage was already in compliance with the instructions of Defendants Martinez and Rada (Compl. ¶ 69) and she was not resisting. Shockingly, neither Defendant made any effort to temper the force used, despite Ms. Savage's reminders that she was pregnant. Most important, the resulting loss of Ms. Savage's viable pregnancy was caused by the trauma to her abdomen inflicted during the assault that Rada explicitly initiated. *See id.* ¶ 75 ("Medical professionals agree that when a pregnant woman has experienced a trauma to her abdomen shortly before a miscarriage, it is appropriate and standard medical practice to attribute the miscarriage to that trauma, rather than to chance."). And with

respect to the first *Quintanilla* factor, Ms. Savage Ms. Savage suffered real injuries that are well beyond *de minimis*. Viewed in the light most favorable to Ms. Savage, as is required at the motion to dismiss stage, Defendant Rada's instigation and direction of the assault on Plaintiff violated her Fourteenth Amendment rights.

Courts have found similar allegations sufficient to state a claim for excessive force under the Fourteenth Amendment. *See, e.g.*, *Williams v. Luna*, 909 F.2d 121, 122, 124 (5th Cir. 1990) (holding that force applied "for no reason" against a compliant detainee is "clearly excessive to the need and objectively unreasonable"); *see also Cry v. Dilliard*, Case No. 3:15cv318, 2017 WL 2172944, at *4 (S.D. Miss. May 16, 2017) (holding plaintiff's claim "that he was complying with an order to move to another cell when the officers used force for no reason" was sufficient to overcome a qualified immunity defense to an excessive force claim).

Plaintiff has alleged sufficient facts from which this Court can infer at this stage of the proceedings that both the June and July uses of force against Plaintiff by Defendants Martinez and Rada were objectively unreasonable. Plaintiff has therefore alleged all elements of each excessive force claim sufficient to withstand Defendants' Motion to Dismiss.

### B. PLAINTIFF SUFFICIENTLY PLEADED A RETALIATION CLAIM

Plaintiff has sufficiently pleaded a retaliation claim against Defendant Martinez. Prisoners have a First Amendment right to be free from retaliation for complaining about a prison official's misconduct, and a violation of this right is actionable under 42 U.S.C. § 1983. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). To state a valid claim for retaliation under 42 U.S.C. § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris*, 449 F.3d at 684.

Plaintiff has properly alleged that Defendant Martinez retaliated against her for speaking out to her mother about the unconstitutional conditions and treatment she experienced in HCJ when he assaulted her in the A-Pod housing unit on or around July 13, 2022. As set forth in the Complaint, Plaintiff has a First Amendment right to speak out about these conditions, and she actually exercised this right when she reported these conditions to her mother and other advocates in the community. Compl. ¶¶ 64, 68, 77. Plaintiff also sufficiently pleaded facts demonstrating Defendant Martinez's intent to retaliate, per his comment, "Now b*tch, tell your mama I did that!" at the conclusion of his July assault on her. *Id.* at ¶¶ 91, 135, 137. Martinez's actions demonstrate his knowledge of her complaints and his intent to silence her by the second assault and the verbal threat to deter her from coming forward with future complaints about her unconstitutional treatment. This is sufficient to meet the second prong of the retaliation test at this stage.

Under the third prong, a prisoner must show that she suffered a retaliatory adverse act that would "chill or silence a person of ordinary firmness from future First Amendment activities." *Morris*, 449 F.3d at 685–86. The threshold is intended to weed out only "inconsequential actions." *Id.* Martinez engaged in a retaliatory adverse act when he assaulted Ms. Savage, handcuffing and biting her and telling her "Now b*tch, tell your mama I did that!" This Court should infer that the assault and verbal threat were capable of deterring a person of ordinary firmness from speaking out about the unconstitutional treatment she had received. *See* Compl. ¶¶ 135-138. Finally, on the fourth element of the test, Defendant Martinez's actions were the direct and proximate cause of the violations of Plaintiff's constitutional rights and the damages she suffered, including physical injuries, pain, suffering, emotional distress, and other losses, as Plaintiff sufficiently alleged in her Complaint. *Id.* at ¶ 139. Plaintiff has therefore alleged all elements of a retaliation claim sufficient to withstand Defendant Martinez's Motion to Dismiss.

## C.    PLAINTIFF SUFFICIENTLY PLEADED A FAILURE TO PROTECT CLAIM

Plaintiff has sufficiently pleaded a failure-to-protect claim against Defendant Martinez. The Fourteenth Amendment places a duty on guards to protect pretrial detainees from violence at the hands of other prisoners while confined. *See Hare*, 74 F.3d at 639; *Longoria v. Texas*, 473 F.3d 586, 592 (5th. Cir. 2006). Guards can be found liable when they "acted or failed to act with subjective deliberate indifference to the detainee's needs." *Hare*, 74 F.3d at 636, 647–48; *see also Adames v. Perez,* 331 F.3d 508, 512 (5th Cir. 2003). A prison official is deliberately indifferent to the prisoner's safety if the official knows that the prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Hare*, 74 F.3d at 648–49.

Courts have found allegations similar to Plaintiff's sufficient to state a claim for failure to protect under the Fourteenth Amendment. *See, e.g.*, *Winslow v. Harris County*, No. H-07-767, 2009 U.S. Dist. LEXIS 143825, at *42–43 (S.D. Tex. June, 8 2009) ("The evidence, viewed in a light most favorable to Plaintiff, shows that Plaintiff was repeatedly kicked in the head, face and body while he lay on the floor. This is sufficient to raise a fact issue that Defendants . . . should have inferred that Plaintiff was at substantial risk for harm by the actions of the other officers. Therefore, . . . Plaintiff has stated a constitutional violation."); *see also Westmoreland v. Butler County*, 29 F.4th 721, 729–31 (6th Cir. 2022) (vacating summary judgment on failure-to-protect claim where plaintiff's mother informed defendants that plaintiff was in danger after being labeled a snitch); *Kingsley v. Hendrickson*, 576 U.S. 389, 391–92 (2015) (holding that plaintiffs need not show subjective awareness of unreasonable force to prove excessive force).

In the parallel but more exacting context under the Eighth Amendment, courts have found similar allegations sufficient to state a claim for failure to protect. *See, e.g.*, *Cardona v. Taylor*,

828 F. App'x 198, 203 (5th Cir. 2020) ("Because we determined that Cardona sufficiently stated a claim for relief regarding the officers' use of excessive force, and because he alleges that other officers, including the supervising officer, were present during the raid but failed to intervene, we conclude that he has stated a claim for relief on this ground as well."); *Smith v. Dunbar*, No. 6:22cv442, 2024 WL 1228986 at *1, *14–15 (E.D. Tex. Feb. 27, 2024) ("[T]he law was clear that an officer standing by and doing nothing while one inmate attacks another violates the Constitution. *Some* action is required . . . Defendant Martinez's alleged failure to intervene, to call for help, or to leave to obtain weapons and/or assistance constitutes a sufficient allegation of deliberate indifference to a known and obvious excessive risk to Plaintiff's safety. Plaintiff's allegations, if taken as true, demonstrate that Defendant Martinez violated a clearly established constitutional right of which a reasonable correctional official would have known . . . .").

Plaintiff alleged in her Complaint that Defendant Martinez failed to intervene when she was assaulted by other detainees in HCJ in July 2022. *See* Compl. ¶ 90. Prisoners in her housing unit jumped and beat Ms. Savage in plain view of Defendant Officer Martinez. *Id.* During this assault, a detainee bit Ms. Savage on her right side so hard that she has a scar to this day. *Id.* The assailants beat Ms. Savage until she was too dizzy to stand up from the assault, leaving her on the floor while Defendant Martinez stood by watching without intervening. *Id.* ¶ 141. Because Officer Martinez observed the assault on Ms. Savage, he subjectively knew of the risk to Ms. Savage and also of the harm she experienced. When he failed to intervene, he acted with deliberate indifference to Ms. Savage's health and safety and did not take reasonable measures to abate the risk and the harm she suffered. This failure to intervene extended to Martinez's refusal to bring her to the medical unit in the immediate aftermath of her assaults, leaving her in pain and without medical care overnight, exacerbating the harms she suffered as a result. *Id.* ¶ 94.

Plaintiff has alleged sufficient facts from which this Court can infer at this stage of the proceedings that Martinez knew there was a substantial risk of serious harm. Martinez witnessed Ms. Savage's assault, so he was aware of the actualization of that risk as she was pummeled by the other detainees. *Id.* ¶¶ 103, 141. Nonetheless, he did not intervene to stop the altercation and instead contributed to Ms. Savage's harm by assaulting her after these women had stopped, the opposite of his constitutional obligation to protect her. *Hare*, 74 F.3d at 639. These allegations are far from "threadbare recitals of the elements of a cause of action," as Martinez baselessly asserts. Dkt. 55 ¶ 7. Plaintiff has therefore alleged all elements of a failure-to-protect claim sufficient to withstand Defendant Martinez's Motion to Dismiss.

### D. PLAINTIFF HAS SUFFICIENTLY PLEADED STATE LAW CLAIMS AGAINST MARTINEZ

Plaintiff has sufficiently pleaded claims for assault and battery and for wrongful death of an unborn child against Defendant Martinez under Texas State Law. *See* Compl., Counts XI and XII. Defendant Martinez erroneously asserts that Plaintiff has "pled no plausible facts to show that Martinez assaulted her." On the contrary, Martinez's actions as detailed in the Complaint constitute an assault because he intentionally, knowingly, or recklessly caused injury to Plaintiff and her fetus. *See Caver v. Clayton*, 618 S.W.3d 895, 902 n.3 (Tex. Ct. App. 2021). Shoving Ms. Savage against a wall stomach-first while knowing she was pregnant, as evidenced by his statement that he did not "care about you or your bastard babies," rises to an intentional act. Compl. ¶ 178. At the very least, his actions were reckless and knowing. Second, Martinez's willful attack on Ms. Savage resulted in the death of her fetus. *See* Texas Civil Practice and Remedies Code Annotated §§ 71.002, 71.009. Because Ms. Savage notified Martinez during the assault that she was pregnant, he had subjective knowledge of the risk of extreme harm to her and her fetus, but

he proceeded with conscious indifference to the rights and safety of Ms. Savage and her unborn child.

Next, Defendant Martinez incorrectly argues that the Texas Wrongful Death Act precludes recovery for the loss of a fetus when there has been no live birth, citing a case from the 1980s. *See* Motion at 15 (citing *Witty v. American Gen. Capital Distribs., Inc.*, 727 S.W.2d 503, 504 (Tex. 1987)). But Defendant misstates the law. The Texas Wrongful Death Act was amended *over two decades ago* to expand the definition of actionable deaths to those of unborn children. *See* Act of June 20, 2003, 78th Leg., R.S., ch. 822, §§ 1.01–.02, 2003 Tex. Gen. Laws 2607, 2608 (current version at Tex. Civ. Prac. & Rem. Code Ann. §§ 71.001, .003); *see also Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 96–97 (Tex. 2004) (acknowledging 2003 amendments). "Not only did the Legislature expand the term 'individual' to include 'an unborn child at every stage of gestation from fertilization until birth,' it also correspondingly expanded the term 'death' to include the failure of an unborn child 'to be born alive.'" *T.L. v. Cook Children's Med. Ctr.*, 607 S.W.3d 9, 67 (Tex. App.—Fort Worth 2020, pet. denied) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 71.001(3) ("Death"), § 71.001(4) ("Individual")). Defendant Martinez's motion to dismiss on this basis must be denied.

In his Motion to Dismiss, Martinez provides the standard for conditions of confinement claims. But Martinez makes no actual allegations regarding the substance of Plaintiff's claim as it is pled in the Amended Complaint or refute that the allegations are sufficient to state a claim. *See* Compl., Count VII. Defendant additionally provides the standard for episodic-act-or-omission claims, *see* Dkt. 55 at ¶¶ 55-57, however, Plaintiff brings no claims under this theory of liability.

Finally, Defendant attempts to invoke a statutory right to dismissal under Section 101.106 of the Texas Torts Claim Act, but he has not come close to meeting his burden of establishing the

elements required by the statute. Indeed, Martinez's Motion contains only a single sentence of analysis on this issue, which conclusorily states that "Martinez was performing his law enforcement job at the alleged incidents." Dkt. 55 at ¶ 29.

Section 101.106 mandates dismissal when a suit against a governmental employee is (1) based on conduct within the general scope of his employment and (2) could have been brought under the Act against the governmental unit instead. *Garza v. Harrison*, 574 S.W.3d 389 (Tex. 2019). If a claimant elects to bring common law tort claims against a government employee rather than his employer, the employee must demonstrate that he acted within the scope of his employment to be entitled to dismissal of the claims against him. *City of Houston v. Esparza*, 369 S.W.3d 238, 247–48 (Tex. App. 2011). Here, Defendant Martinez has demonstrated no such thing. He claims that "it is undisputed that [he] was performing his law enforcement job" without alleging any facts to demonstrate that he acted within the scope of his employment. Dkt. 55 ¶ 29. Martinez's assault of Ms. Savage for no reason is outside the scope of his employment, a reasonable inference that this Court should draw from Ms. Savage's Complaint. Martinez has thus not met his burden of showing that he is entitled to dismissal at the pleading stage, and his Motion to Dismiss on that basis should be denied.

Defendant Martinez is not entitled to Official Immunity for his assault of Ms. Savage, either. A government employee is entitled to official immunity for "(1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith." A government employee must "conclusively establish" each of these elements to receive official immunity. *Ramirez v. Martinez*, 716 F.3d 369, 379–80 (5th Cir. 2013) (citing *Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2002)). "Good faith" is established by showing that "a reasonably prudent officer, under the same or similar circumstances, could have

believed that his conduct was justified based on the information he possessed when the conduct occurred." *Id.* at 380. A reasonable jailer would have known that shoving the pregnant Ms. Savage against a wall stomach-first, for no apparent reason, was not justified. Courts in this Circuit have found it unreasonable to use force to attack a prisoner who is trying to comply or is not actively noncompliant. *See Coons v. Lain*, 277 F. App'x 467, 471 (5th Cir. 2008). Ms. Savage was not doing anything when she was viciously attacked, and Defendant Martinez has thus failed to meet his burden of showing entitlement to Official Immunity for his objectively unreasonable behavior.

### E. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

Lastly, Defendants make the cursory argument that "Plaintiff has failed to plead a constitutional violation by Martinez and Rada" and that they are "entitled to a dismissal based on qualified immunity." Dkt. 55 ¶ 40. Plaintiff, however, has adequately alleged facts showing that Defendants violated her Fourteenth Amendment rights, rendering qualified immunity unavailable.

"[A]n officer enjoys qualified immunity . . . unless he has violated a 'clearly established' right such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Kingsley*, 576 U.S. at 400 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)) (alteration in original); *see also Smith v. Dunbar*, No. 6:22cv-422, 2024 WL 1228986, at *1, *13–14 (E.D. Tex. Feb. 27, 2024) (setting out both prongs of the test: "whether the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of [constitutional or] federal law" and "whether the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known.") (citations omitted). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing

law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quotation marks and citations omitted).

### 1. Excessive Force

Defendants incorrectly assert that Plaintiff's allegations, taken as true, do not amount to a constitutional violation. As demonstrated above, Defendants Martinez and Rada acted with objectively unreasonable excessive force by instigating and attacking a pregnant woman for no reason, *see* Compl. ¶¶ 69-71, violating Ms. Savage's Fourteenth Amendment rights. Therefore, Ms. Savage has successfully pleaded the first prong of demonstrating inapplicability of qualified immunity. At this stage in the proceedings, qualified immunity allegations are viewed in the light most favorable to plaintiff. *See Smith*, 2024 WL 1228986, at *13–14. A reasonable jailer would have known that baselessly assaulting or instigating an assault on a detainee in HCJ's care would constitute a violation of that detainee's constitutional rights.

Defendant Martinez acted objectively unreasonably by committing a second physical attack on Ms. Savage right after she had been beaten by other detainees, which also violated Mikayla's Fourteenth Amendment rights. *See* Compl. ¶ 91. Once again, Ms. Savage can demonstrate that she successfully meets the first prong of the test, as laid out above. Second, a reasonable jailer would have known that continuing the assault on a detainee, including biting them on the back, would constitute a violation of that detainee's constitutional rights.

Controlling case law has long held that a pretrial detainee's rights are violated when a guard ignores a substantial risk of harm and fails to take reasonable measures to abate that harm. *See Kingsley*, 576 U.S. at 396. Thus, by the time of these incidents, it was clear that the use of excessive or objectively unreasonable force, for no apparent reason, on an individual who was not actively resisting was a violation of clearly established federal law. *See Cry*, 2017 WL 2172944, at *4 (holding plaintiff's claim "that he was complying with an order to move to another cell when

the officers used force for no reason" was sufficient to overcome a qualified immunity defense to an excessive force claim). This information is not only well established and well known but is also common sense. If this Court has any doubt, the Supreme Court has held that obvious violations of constitutional rights do not receive qualified immunity even in the absence of clearly established law. *See Hope*, 536 U.S. at 745 ("The obvious cruelty inherent in this practice should have provided respondents with some notice that their alleged conduct violated Hope's constitutional protection against cruel and unusual punishment.").

For all these reasons, therefore, Plaintiff has successfully pleaded the second prong of demonstrating the inapplicability of the qualified immunity defense as to her excessive force claim.

### 2. Retaliation

Martinez violated Plaintiff's First Amendment Rights by assaulting her, biting her on the back, and saying, "Now b*tch, tell your momma I did that!" as a form of retaliation in response to her speaking out about the abuses she suffered in HCJ. Compl. ¶ 91. His actions were an attempt to scare and dissuade Ms. Savage from speaking out in the future. Therefore, Plaintiff has successfully pleaded this claim and has met the first prong of showing the inapplicability of qualified immunity.

Controlling case law in this Circuit has long held that a pretrial detainee has the right to be free from retaliation—a violation of the First Amendment—when they complain about a prison official's conduct. *See Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017) ("Prison officials may not retaliate against prisoners for exercising their constitutional rights. This includes a prisoner's First Amendment right to file grievances, as retaliation has the potential to discourage exercising that right.") (internal citations omitted); *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995) ("The law of this circuit is clearly established, and was so in 1990 when the instant disciplinary charges issued, that a prison official may not retaliate against or harass an inmate for exercising the right

of access to the courts, or for complaining to a supervisor about a guard's misconduct."). Thus, when Defendant Martinez attacked and bit Ms. Savage, it was already clear that retaliation against an individual who spoke about the mistreatment she suffered at the hands of guards was a violation of clearly established federal law. Therefore, Plaintiff has successfully pleaded and met the second prong of demonstrating the inapplicability of the qualified immunity defense to her retaliation claim.

### 3. Failure to Protect

Defendant Martinez also violated Plaintiff's Fourteenth Amendment Rights when he failed to intervene as Ms. Savage was assaulted by other detainees in HCJ, acting with deliberate indifference to Ms. Savage's health and safety. Compl. ¶ 90. Having witnessed the assault, Martinez was aware of the substantial risk of harm to Ms. Savage. However, he chose to ignore that risk and later refused to take Ms. Savage to the medical unit. Plaintiff has successfully pleaded and met the first prong of demonstrating inapplicability of the qualified immunity defense.

Controlling case law has long held that a pretrial detainee's rights are violated when guards perceive and ignore a substantial risk of harm, failing to take reasonable measures to abate that harm. *Farmer*, 511 U.S. at 828. By the time other detainees attacked Ms. Savage in plain view of Martinez, it was clear that a prison guard's failure to intervene was a violation of clearly established federal law. This information is well established and well known. Therefore, Plaintiff has successfully stated a claim and met the second prong of demonstrating the inapplicability of the qualified immunity defense.

The Complaint's factual allegations, which must be taken as true at this stage, preclude dismissal on the basis of qualified immunity for Counts I, II, IV, and V. For all of these reasons, Defendants' Motion to Dismiss on the basis of qualified immunity should be rejected.

## VIII.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Dated: October 11, 2024

Respectfully submitted,

*/s/ Karley T. Buckley*
Karley T. Buckley
DLA Piper LLP (US)
Texas Bar No. 24123596
845 Texas Avenue, Suite 3800
Houston, Texas 77002
(713) 425-8421
karley.buckley@us.dlapiper.com

Miriam R. Nemeth (DC Bar #1028529)
(admitted *pro hac vice*)
D Dangaran (MA BBO #708195)
(admitted *pro hac vice*)
RIGHTS BEHIND BARS
416 Florida Avenue, NW #26152
Washington, DC 20001
(202) 455-4399
miriam@rightsbehindbars.org
d@rightsbehindbars.org

David H. Bamberger
DLA Piper LLP (US)
DC Bar #362285
(admitted *pro hac vice*)
500 Eighth Street, NW
Washington, DC 20004
(202) 799-4500
david.bamberger@us.dlapiper.com

John C. Canoni
DLA Piper LLP (US)
Texas Bar No. 24117335
(admitted *pro hac vice*)
1900 North Pearl Street, Suite 2200
Dallas, Texas 75201
(214) 743-4500
john.canoni@us.dlapiper.com

**ATTORNEYS FOR PLAINTIFF**
**MIKAYLA CHEYENNE SAVAGE**

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record. Any other counsel of record will be served by first class U.S. mail.

*/s/ Karley T. Buckley*
Karley T. Buckley