United States District Court
Southern District of Texas
**ENTERED**
June 17, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **MIKAYLA CHEYENNE SAVAGE,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:24-CV-0666** |
| | § | |
| **HARRIS COUNTY, TEXAS,** *et al.*, | § | |
| | § | |
| *Defendants.* | § | |

### <u>MEMORANDUM & ORDER</u>

This is a § 1983 case arising from Plaintiff Mikayla Savage's detention at Harris County Jail from June 2, 2022 to September 1, 2022. Before the Court are the Motion to Dismiss filed by Defendants Arnoldo Martinez and Andrew Rada (ECF No. 55), Motion to Dismiss filed by Defendants Harris County and Sheriff Ed Gonzalez (ECF No. 56), and Motion to Dismiss filed by Defendant Taylor Hodges (ECF No. 58).

For the reasons that follow, the Motion to Dismiss filed by Arnoldo Martinez and Andrew Rada is granted in part and denied in part, the Motion to Dismiss filed by Defendants Harris County and Sheriff Ed Gonzalez is granted, and the Motion to Dismiss filed by Taylor Hodges is denied.

### I.    BACKGROUND[1]

#### a.  Factual History

Plaintiff was incarcerated at Harris County Jail (the "Jail") from June 2, 2022 to September 1, 2022. She was arrested on charges of violating a protective order and aggravated assault, and

---

[1] Although Defendants deny these allegations, at this stage all well-pleaded factual allegations are accepted as true. *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

1

her bail was set at $80,000. ECF No. 52 ¶ 55. She was 23 years old and pregnant at the time of her booking. *Id.* ¶ 56.

First, Plaintiff was detained in Cell 4L1 which she alleges "was visibly covered with feces, ridden with bed bugs, had blood on the ceiling, and had no air circulation." *Id.* ¶ 59. During her detention in the cell, Plaintiff vomited from the smell, but Defendant Officers Lozano and Lagarde refused to bring her any cleaning supplies. Defendant Officer Hodges asked her, "What do you think this is, the Hilton?" *Id.* ¶ 60. Plaintiff passed out and hit her head but was not provided medical care for the injury. *Id.* ¶ 61. Plaintiff attempted to clean the cell with her sole blanket and subsequently requested a clean blanket. Defendants instead brought her a blanket with feces on it and only provided her a clean blanket after repeated complaints. *Id.* ¶ 62. The Texas Commission on Jails Standards (TCJS) later affirmed that she had been housed with a soiled blanket, in violation of minimum jail standards. *Id.*

Plaintiff filed numerous complaints about her cell and asked her mother, Malinda Nash, to report her concerns. *Id.* ¶ 64. After multiple failed attempts to reach someone, Ms. Nash made a formal complaint through the Jail's Inmate Care and Concerns portal. Staff admitted that Plaintiff had been given a dirty blanket, but said it was replaced with a clean one. *Id.* ¶¶ 64-65. Ms. Nash made another complaint about the conditions, and an investigator told her that staff had inspected Plaintiff's cell. *Id.* ¶ 66. Plaintiff alleges that she was detained in that cell for around two weeks, until on or around June 16, 2022, before she was finally moved to Cell 4M2, the "pregnancy tank" in the Jail's medical unit. *Id.* ¶ 67.

Plaintiff alleges that, on June 6 or 7, 2022, while waiting in line for transportation to court, she was singled out for assault by Defendant Officer Rada. *Id.* ¶¶ 69-72. Rada told Defendant Officer Martinez to "grab" Plaintiff, and Martinez "yanked [her] by the collar of her shirt and

swung her around like a rag doll." *Id.* ¶ 70. When Plaintiff said she was pregnant, Martinez allegedly responded "I do not give a fuck about you or your bastard babies," pushed her into the wall stomach-first, and continued to insult her. *Id.* ¶¶ 70-71.

Plaintiff alleges that she lost her pregnancy due to Martinez's assault. *Id.* ¶¶ 73-84. She began experiencing "lower abdominal pain and cramping, nausea, vomiting, a gush of clear or white fluid from her vagina, and later vaginal bleeding" after the assault and sought medical care. *Id.* ¶ 73. When she finally received an ultrasound around June 17 or 18, she was told her pregnancy was no longer viable and that the miscarriage occurred within the prior two weeks. *Id.* ¶ 74. Plaintiff then began feeling unwell around June 20, but Defendants denied her requests for medical attention for days. Defendants also did not respond to complaints filed by Plaintiff's mother or outreach by the Texas Jail Project. *Id.* ¶¶ 76-78. On June 24, she was taken to the hospital and was given an abortion that she found traumatic. *Id.* ¶ 79. After she was discharged on June 25, the Jail allegedly failed or intentionally declined to comply with the hospital's discharge instructions including a follow-up appointment, wheelchair, infirmary housing, and bed rest. *Id.* ¶ 80.

Plaintiff alleges that she suffered five different physical and sexual assaults over the next two months. *Id.* ¶ 85. After her abortion, she was moved to Cell 4H1 where she was physically and/or sexually assaulted by several other detainees. *Id.* ¶ 86. She alleges that Defendant Officers Lagarde, Rada, Cheatham, and Martinez did not intervene to protect Mikayla and instead denied her access to the medical unit or medical care. *Id.*

Around June 30, she was moved to Cell 4F2 where she was assaulted by another detainee. *Id.* ¶ 87. She alleges that Defendant Officers Mathews and Cheatham did not intervene or take her to the medical unit until the next day, at which point she was given ibuprofen and returned to general population. *Id.*

3

Plaintiff was then moved to Cell 4C2 where other detainees tied her up and sexually assaulted her. The detainees penetrated her vaginally and anally with a foreign object. *Id.* ¶ 88. Plaintiff alleges that detention officers in the "picket" could see into the unit during the assault but failed to intervene to protect her. *Id.* ¶ 89. She was not taken to the medical unit until she filed a Prison Rape Elimination Act complaint. *Id.* Afterwards, she was returned to the same cell. *Id.*

Soon afterward, other detainees in her housing unit attacked her within plain view of Officer Martinez. *Id.* ¶ 90. She alleges that Martinez did not intervene to stop the assault but instead continued it once the original assailants left: "He yanked her off the floor, handcuffed her, and pushed her against the wall, again. Defendant Officer Martinez dragged her to a holding cell, banged her head against the wall, and shoved his knee into her back in a way that forced her knees into the metal bars on the bed in the cell. He then shockingly bit [Plaintiff] on her back. He concluded the abuse by verbally denigrating and threatening [Plaintiff], saying 'Now bitch, tell your mama I did that!'" *Id.* ¶¶ 90-91.

The next day, Plaintiff was taken to the medical unit where she presented her multiple injuries and disclosed that she was suicidal from the assaults. *Id.* ¶¶ 94-96. She returned to the medical unit on July 18 with cuts on her arms and reported that she tried to commit suicide by hanging but was discovered by a guard. *Id.* ¶ 99. In response, the doctor counseled her to read the Bible. *Id.* She returned to the medical unit again on July 20 or 21 after swallowing pills to kill herself. *Id.* She submitted inmate requests on July 27 and July 31 about her self-harm and continuing suicide attempts, but when she was finally taken to the medical unit days later, the cries for help were described by a doctor as "no…true attempts." *Id.* ¶ 100.

On August 18, back in unit 4H where she was first assaulted, Plaintiff was again assaulted by other detainees and again denied medical care until the next day. *Id.* ¶ 103. Defendant Matthews

allegedly witnessed several women attack Plaintiff and throw urine on her, but the officer left her without a change of clothes or blanket. *Id.* After the assault, Plaintiff was placed in solitary confinement with no food or change of clothing for the first 24 hours. *Id.* ¶ 105. She remained in solitary confinement for the remaining two weeks of her incarceration where she alleges continued sub-standard medical care including denial of medication. *Id.* ¶ 106. She again attempted suicide on August 22. *Id.* ¶ 109. After the suicide attempt, Plaintiff was admitted to the mental health floor where she remained in solitary confinement conditions. *Id.* ¶ 111.

On August 31, Plaintiff returned to court, and the charges against her were dropped. *Id.* ¶ 113. She was released from the Jail on September 1, 2022. *Id.*

### b. Procedural History

Plaintiff filed suit on February 26, 2024 against Defendants Harris County, Sheriff Ed Gonzalez, Detention Officers Martinez, Roda, and Mathews and unnamed Officer Does. ECF No. 1. Plaintiff filed a Motion for Early Discovery to identify the Detention Officers (ECF No. 18), and the Court granted the motion at a hearing on May 6, 2024. After conducting early discovery, Plaintiff filed her First Amended Complaint on September 5, 2024. ECF No. 52. Now before the Court are the Motion to Dismiss filed by Defendants Arnoldo Martinez and Andrew Rada (ECF No. 55), Motion to Dismiss filed by Defendants Harris County and Sheriff Ed Gonzalez (ECF No. 56), and Motion to Dismiss filed by Defendant Taylor Hodges (ECF No. 58).

## II. LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering such a motion, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004); *Bustos v. Martini Club Inc.*, 599 F.3d 458,

461 (5th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading need not contain detailed factual allegations but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

## III.    ANALYSIS

### a.    Defendants Martinez and Rada's Motion to Dismiss

In the first pending Motion to Dismiss, Defendants Martinez and Rada seek to dismiss Plaintiff's Fourteenth Amendment claims against both of them as well as Plaintiff's First Amendment and state law claims against Martinez. ECF No. 55. Martinez and Rada also assert that they are entitled to qualified immunity on Plaintiff's claims. *Id.*

### i.    Fourteenth Amendment Excessive Use of Force Claim

First, Plaintiff brings a claim for excessive use of force against Martinez and Rada for the events of June 6 or 7, 2022 and a separate claim against Martinez for the events of July 13, 2022. Defendants assert that even if Plaintiff's allegations – that (1) she was pulled out of a line of women waiting for transportation to court and slammed against the wall, causing her to suffer a miscarriage and (2) she was violently handcuffed, dragged into a cell, and bit by Martinez – are taken as true, she "has pled no facts to show that Martinez and Rada purposely or knowingly used force against her in a manner that was objectively unreasonable." ECF No. 55 at 10. Defendants further invoke qualified immunity.

6

Qualified immunity is an affirmative defense that shields a government official "from civil damages liability unless [he] violated a statute of constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). When a defendant invokes qualified immunity, the plaintiff must demonstrate that the defense does not apply. *See King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016). To overcome a claim of qualified immunity, the plaintiff must "(1) allege facts that 'make out a violation of a constitutional right,' and (2) show that the 'right at issue was clearly established at the time of the defendants' alleged misconduct.'" *Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024)

### 1. Constitutional Violation

"A pretrial detainee receives the protection of the Due Process Clause of the Fourteenth Amendment." *Brothers v. Klevenhagen*, 28 F.3d 452, 455–56 (5th Cir. 1994). To sustain a claim for excessive force under § 1983, a plaintiff must plead an "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). While excessive force claims need not allege "significant injury," "the injury must be more than *de minimis.*" *Tarver*, 410 F.3d at 752 (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

Under Fifth Circuit precedent, "force against a pretrial detainee is 'excessive' and a violation of the Fourteenth Amendment when the force [is] objectively unreasonable." *Austin v. City of Pasadena*, 74 F.4th 312, 322 (5th Cir. 2023) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015)). "Courts weigh the following factors to determine reasonableness: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the

security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* The Fifth Circuit "has made clear that force which is disproportionate to the need is unreasonable" and thus in violation of the Fourteenth Amendment. *Id.* at 323 (citing *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 324 (5th Cir. 2020).

Here, all the *Kingsley* factors cut in Plaintiff's favor and lead the Court to conclude that Plaintiff has adequately pled a constitutional violation. With respect to the first incident, there was no need for the officers to use force against Plaintiff when she was merely waiting in line for transportation to Court. ECF No. 52 ¶¶ 69-72. Plaintiff's alleged injury, the loss of her pregnancy, was more than *de minimis*. *Id.* ¶¶ 73-84; *See Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006) (holding one-centimeter abrasions on both his left knee and left shoulder, pain in his right knee, and tenderness around his left thumb established a more than *de minimis* injury). Despite Plaintiff's statement that she was pregnant, Defendant Martinez made no effort to temper or limit the amount of force used but instead pushed Plaintiff into the wall stomach-first. ECF No. 52 ¶¶ 70-71. There does not appear to have been any particular security problem at issue, and Plaintiff could not have been reasonably perceived as a threat in the circumstances. *Id.* ¶¶ 69-70. Finally, Plaintiff was not actively resisting the officer's instructions to line up for transportation to court. *Id.*

The *Kingsley* factors also weigh in Plaintiff's favor for the second incident. First, Plaintiff was prone on the floor after an assault by prisoners, so there was no need to use any force against her let alone the grossly disproportionate force alleged. *Id.* ¶ 91. Plaintiff's alleged injuries were documented as "pain around her right ribs, pain and contusions on her right arm, limited range of motion in her right fingers and arm (which she could not even put back in her shirt), bruising on her back near her spine, a lesion under her right breast, and a human bite mark 'to right area of breast and back.'" *Id.* ¶ 94. These injuries were collectively more than *de minimis*. *See Brown*, 472

F.3d at 387. Martinez made no effort to temper or limit the amount of force used, even though there was no security problem at issue and the Plaintiff, lying on the ground after suffering an assault, could not have reasonably been perceived as a threat. *Id.* ¶ 91. Finally, Plaintiff was, at most, passively resisting Martinez's instructions to stand up because of her injuries from the assault rather than actively resisting. *Id.* Therefore, Plaintiff has adequately pled a constitutional violation of her Fourteenth Amendment right to be free from excessive force.

## 2. Clearly Established Law

Next, the Court turns to whether Plaintiff's right to be free from excessive force was clearly established at the time of the events. A right is clearly established where "prior decisions gave reasonable warning that the conduct at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). Alternatively, qualified immunity is unavailable if the constitutional violation was "obvious." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

The Court finds that Plaintiff's right to be free from excessive force was clearly established for both incidents. With respect to the first incident, the Fifth Circuit held in *Darden v. City of Fort Worth* that "a constitutional violation occurs when an officer tases, strikes, or violently slams" a subject who "is not actively resisting." *Darden v. City of Ft. Worth*, 880 F.3d 722, 731 (5th Cir. 2018). While *Darden* involved the police arrest of a suspect, the Fifth Circuit cited this holding in denying qualified immunity for excessive force against a pretrial detainee. *Austin*, 74 F.4th at 322; *see also Cry v. Dilliard*, Case No. 3:15cv318, 2017 WL 2172944, at *4 (S.D. Miss. May 16, 2017) (holding plaintiff's claim "that he was complying with an order to move to another cell when the officers used force for no reason" was sufficient to overcome a qualified immunity defense to an excessive force claim). Plaintiff was not actively resisting the officer's instructions when Rada singled her out and Martinez violently slammed her into the wall. With respect to the second

incident, the Fifth Circuit has explained that "the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable." *Fairchild v. Coryell Cnty., Texas*, 40 F.4th 359, 368 (5th Cir. 2022) (quoting *Timpa v. Dillard*, 20 F.4th 1020, 1034 (5th Cir. 2021)). Plaintiff was handcuffed during the second assault, so Martinez's continued use of force against her violated clearly established law. Accordingly, Plaintiff's right to be free from excessive force was clearly established at the time of the incident, and Martinez and Rada are not entitled to qualified immunity at this stage.

### ii. First Amendment Retaliation Claim

Next, Plaintiff brings a First Amendment retaliation claim against Defendant Martinez. She alleges that he retaliated against her for complaining to her mother and for her mother's complaints to the Jail. Specifically, she alleges that he said, "Now bitch, tell your mama I did that!" while assaulting her on July 13, 2022.  ECF No. 52 ¶¶ 90-91.  Defendant Martinez argues that the claim should be dismissed "[b]ecause Martinez was responding to an incident involving [Plaintiff] and another inmate, [Plaintiff] has not pled facts to show that Martinez would not have taken the action that he took absent the alleged retaliatory motive. [Plaintiff]'s allegation that Martinez retaliated against her is conclusory and not sufficient to state a claim for retaliation." ECF No. 55 at 11.

### 1. Constitutional Violation

Pretrial detainees have a First Amendment right to be free from retaliation for exercising their constitutional rights to file grievances against jail officials. *Baughman v. Hickman*, 935 F.3d 302, 312 (5th Cir. 2019) (citing *DeMarco v. Davis*, 914 F.3d 383, 388 (5th Cir. 2019)). To state a § 1983 claim for retaliation in violation of the First Amendment, a detainee must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Id.* "Even if an act might be 'motivated by retaliatory intent,' it is not a constitutional violation if the effects of it 'are so *de*

10

*minimis* that they would not deter the ordinary person from further exercise of his rights.'" *Id.* (quoting *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006)). The causation standard places a "significant burden" on a plaintiff to establish that "but for the retaliatory motive the complained of incident…would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). To do so, a plaintiff must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.*

Plaintiff alleges that she exercised her First Amendment right to speak about the conditions at the Jail by repeatedly filing complaints about her treatment (including about Martinez's behavior) and directing her mother to report her concerns to the Jail. ECF No. 52 ¶¶ 64, 68, 77-78. Plaintiff further alleges Martinez's explicit intent to retaliate against her for exercise of her First Amendment right was shown by his comment "Now bitch, tell your mama I did that!" after biting her on the back. *Id.* ¶ 91. Martinez's statement demonstrates a knowledge of Plaintiff's complaints to her mother, and the retaliatory adverse act of assaulting and biting Plaintiff was more than *de minimis* such that it would deter an ordinary person from exercising First Amendment rights. Finally, Plaintiff's allegations present both direct evidence of causation and a chronology of events from which retaliation may be inferred. Therefore, Plaintiff has adequately pled a constitutional violation of her First Amendment right to be free from retaliation.

### 2. Clearly Established Law

The Court must also consider whether Plaintiff's right to be free from retaliation was clearly established at the time of the incident. The Fifth Circuit has long held that "The law of this circuit is clearly established, and was so in 1990 when the instant disciplinary charges issued, that a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60

F.3d 1161, 1164 (5th Cir. 1995); *see also Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017) ("Prison officials may not retaliate against prisoners for exercising their constitutional rights. This includes a prisoner's First Amendment right to file grievances, as retaliation has the potential to discourage exercising that right.") (internal citations omitted). Plaintiff presents allegations of retaliation for exercising her right to file grievances and complain about Jail officers' misconduct. Accordingly, Martinez is not entitled to qualified immunity on her First Amendment retaliation claim at this stage.

### iii.  Fourteenth Amendment Failure-to-Protect Claim

Next, Plaintiff brings a Fourteenth Amendment failure-to-protect claim against multiple officers, including Martinez. She alleges that Martinez failed to intervene when she was assaulted by other detainees on July 12, 2022. ECF No. 52 ¶ 90. Defendants argue that Plaintiff "fails to plead sufficient facts that Martinez and Rada had actual knowledge that several other women detainees would assault [Plaintiff] and they disregarded an excessive risk to [Plaintiff]'s safety." ECF No. 55 at 13. Although Defendants argue for dismissal of the failure-to-protect claim against both Martinez and Rada, Plaintiff only asserts the claim against Martinez.

### 1.  Constitutional Violation

It is well established that jail officials have a constitutional duty, pursuant to the Fourteenth Amendment, to protect pretrial detainees from violence at the hands of other detainees. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 641 (5th Cir. 1996). Jail officials can be found liable for failure-to-protect when they "acted or failed to act with subjective deliberate indifference to the detainee's needs." *Id.* at 647–48. A jail official is deliberately indifferent to the detainee's needs if the official has knowledge that the detainee faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* at 648-49 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)).

Courts have held that similar allegations that officers viewed an assault on a detainee and failed to intervene were sufficient to state a failure-to-protect claim. *See Winslow v. Harris Cnty.*, No. CV H-07-767, 2009 WL 10715152, at *18 (S.D. Tex. June 8, 2009), *report and recommendation adopted*, No. CV H-07-767, 2009 WL 10715167 (S.D. Tex. July 10, 2009). Plaintiff's allegations that Martinez watched other detainees assault her so severely that she was unable to get up are sufficient for the Court to infer that Martinez had actual knowledge that Plaintiff faced was a substantial risk of harm, especially in light of Plaintiff's additional allegations that Martinez himself told Plaintiff's assailants about her mother's complaints to Jail officials. ECF No. 52 ¶¶ 90, 104. Although Defendants assert that Plaintiff "fails to plead sufficient facts that Martinez had actual knowledge that several other women detainees would assault Savage and he disregarded an excessive risk to Savage's safety," the allegation that he witnessed the assault and may even have acted to bring it about is enough to defeat this assertion. Further, Martinez did not take reasonable measures to abate the assault since it is alleged that he took no action beyond watching the assault and continuing it after the detainees left Plaintiff on the floor. *Id.* ¶¶ 90-91.

## 2. Clearly Established Law

It is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *Longoria v.* Texas, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer*, 511 U.S. at 832-33 (1970)). Other courts in this circuit have found that, under Fifth Circuit precedent, "the law was clear that an officer standing by and doing nothing while one inmate attacks another violates the Constitution. *Some* action is required." *Smith v. Dunbar*, No. 6:22CV442, 2024 WL 1228986, at *6 (E.D. Tex. Feb. 27, 2024), *report and recommendation adopted*, No. 6:22-CV-00442, 2024 WL 1221182 (E.D. Tex. Mar. 21, 2024).

Accordingly, Martinez is not entitled to qualified immunity on Plaintiff's failure-to-protect claim at this stage.

### iv.  State Law Claims[2]

Plaintiff also asserts two state law claims against Martinez: assault and battery against Martinez in his individual capacity and wrongful death of an unborn child against Martinez in his individual capacity.

Martinez contends that he is entitled to dismissal of Plaintiff's state law claims pursuant to section 101.106(f) of the Texas Tort Claims Act (TTCA). TEX. CIV. PRAC. & REM. § 101.001(5). Section 101.106(f), an election of remedies provision, provides "If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." CIV. PRAC. & REM. § 101.106(f). Thus, a defendant is entitled to dismissal under Section 101.106(f) if the plaintiff's claim (1) is based on conduct within the general scope of the defendant's employment with a governmental unit and (2) could have been brought against the governmental unit under the TTCA.

Defendant states that "it is undisputed that Martinez was performing his law enforcement job at the time of the alleged incidents." ECF No. 55 at 15. The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by a competent authority." TEX CIV. PRAC. & REM. § 101.001(5). The TTCA "strongly

---

[2] Although the Court ruled differently on this issue at the November 22, 2024 Motion Hearing, "A court has the power to revisit prior decisions of its own…in any circumstance…." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).

favors dismissal of governmental employees." *Tipps v. McCraw*, 945 F. Supp. 2d 761, 766 (W.D. Tex. 2013), *citing Waxahachie Indep. Sch. Dist. v. Johnson*, 181 S.W.3d 781, 785 (Tex. App.–Waco 2005). "'An official acts within the scope of her authority if she is discharging duties generally assigned to her.'" *Id.* (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994)). An official acts within the scope of authority even if he acts wrongfully, negligently, or in part to serve his own interests. *Id.* As a Detention Officer, Martinez was acting within the scope of employment when he allegedly assaulted Plaintiff because he was discharging duties generally assigned to him to supervise detainees. Thus, Martinez satisfies the first prong for dismissal pursuant to TTCA Section 101.106(f).

Further, Plaintiff could bring the state law claim for assault and battery and wrongful death of an unborn child claim against the government unit under the TTCA. *See Gomez v. Massey*, No. 3:18-CV-00348, 2019 WL 4034319, at *4 (S.D. Tex. Aug. 27, 2019) ("Since the Parents' wrongful death claim arises in tort, the Court finds that the Parents' wrongful death claim could have been 'brought under the Act' against the League City Police Department for purposes of § 101.106(f)'s applicability. Having now found that both elements of § 101.106(f) are met, the Court dismisses the Parents' state law claim for wrongful death against Massey in his individual capacity since he is statutorily immune."). Even though the TTCA does not waive immunity for intentional torts like assault and battery, the Texas Supreme Court has held "that for section 101.106(f), suit 'could have been brought' under the [TTCA] against the government regardless of whether the Act waives immunity from suit." *Franka v. Velasquez*, 332 S.W.3d 367, 385 (Tex. 2011); *see also Howard v. City of Houston et al.* No. CV H-21-1179, 2022 WL 2106466, at *4 (S.D. Tex. June 10, 2022) (dismissing assault and battery claim pursuant to TTCA Section 101.106(f)).

Therefore, Martinez is entitled to dismissal of Plaintiff's assault and battery claim and wrongful death of an unborn child claim under TTCA Section 101.106(f).

### b. Defendant Harris County and Sheriff Gonzalez's Motion to Dismiss

In the second pending Motion to Dismiss, Defendants Harris County and Sheriff Ed Gonzalez seek to dismiss Plaintiff's First Amended Complaint in its entirety. ECF No. 56. Defendants' Motion addresses "the claims barred by limitations and the claims Plaintiff asserts against Harris County and Sheriff Gonzalez under 42 U.S.C. §1983 and *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)." *Id.* at 6.

### i. Statute of Limitations

First, Defendants assert that "Plaintiff's claims against the newly named individual Defendants are barred by the statute of limitations because the relation back doctrine does not apply." ECF No. 56 at 7. While Plaintiff's Original Complaint named 31 John Doe Defendants, her First Amended Complaint replaced them with eight individual officers. Defendants Harris County and Sheriff Gonzalez do not have standing to argue that claims against the individual officers are barred by the statute of limitations. *See Hess v. Union Standard Ins. Co.*, No. CIVA 09-3789, 2009 WL 3597637, *2 (E.D. La. Oct. 26, 2009) (holding that a party not named in a specific count of a complaint lacks standing to move for dismissal of that count).

### ii. *Monell* Liability

Next, Defendants argue that "Plaintiff failed to allege sufficient facts to hold Movants liable under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)." Plaintiff asserts four claims against Harris County, Texas and Sheriff Gonzalez: Counts III (excessive use of force), VI (failure to protect), VIII (unconstitutional conditions of confinement), and IX (deliberate indifference), each of which arise under *Monell*'s provision for municipal liability. To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must show that (1) an official

16

policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

Defendants' argument appears to be that Plaintiff has not alleged a pattern of similar incidents that would suggest the existence of a municipal policy or custom. An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (citation and quotation marks omitted). "To find a municipality liable for a policy based on a pattern, that pattern 'must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.'" *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017) (internal citations omitted).

A plausible pattern "requires similarity and specificity; [p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Hicks-Fields v. Harris Cnty.*, 860 F.3d 803, 810 (5th Cir. 2017) (quoting *Peterson*, 588 F.3d at 850) (cleaned up). The similarity requirement "should not be exaggerated," but the prior acts must "be fairly similar to what ultimately transpired." *Id.*

Additionally, with respect to numerosity, "[t]he number of incidents and other allegations necessary to establish a pattern representing a custom, on a motion to dismiss, varies." *Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2017) (citation omitted). "Other than requiring more than one incident by non-policymakers, neither the Fifth Circuit nor the Supreme Court [has] set a specific number of incidents that is required for a plausible claim of municipal liability under

a custom or practice." *Edwards v. Oliver*, No. 3:17-CV-01208-M-BT, 2019 WL 4603794, at *7 (N.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, No. 3:17-CV-01208-M-BT, 2019 WL 4597573 (N.D. Tex. Sept. 23, 2019) (citation omitted). Significantly, courts do not apply a strict numerical threshold but instead look at the incidents in context. *See, e.g.*, *Vess v. City of Dallas*, No. 3:21-CV-1764-D, 2022 WL 2277504, at *10-11 (N.D. Tex. June 23, 2022). "Where the violations are flagrant or severe," a shorter pattern of conduct can demonstrate that "diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984).

First, to establish an official policy of excessive use of force, Plaintiff asserts that the Jail has "extensive history of guards assaulting prisoners, at times leading to death and at other times causing severe injuries" that has become the "de facto policy" of the Jail. ECF No. 52 ¶¶ 128, 131. However, Plaintiff's allegations do not sufficiently establish the existence of such a policy. Although Plaintiff alleges numerous incidents of officers using excessive force unprovoked, she does not provide factual detail about these incidents.[3] Instead, she refers generally to deaths in the jail and civil rights suits against the Jail. Although the number of incidents could likely satisfy the numerosity prong, her descriptions fail to establish the requisite specificity to show a pattern or practice of excessive force. Plaintiff's additional evidence of excessive force, the DOJ report and statistics about violence at the jail, cannot overcome this weakness in her claim. Without a description of the similar incidents of excessive force alleged in the Complaint, this documentation

---

[3] Several of the incidents for which Plaintiff does provide factual detail occurred after her incarceration at the Jail. As a threshold matter, Defendants are correct that Plaintiff cannot rely on incidents that occurred *after* the incident involving Plaintiff. The Fifth Circuit has explained that a pattern "requires 'sufficiently numerous *prior* incidents.'" *Peterson*, 588 F.3d at 850 (emphasis added) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

cannot establish an ongoing municipal custom of allowing Jail officers to use excessive force against detainees with impunity.

The same failure to establish an official policy applies to Plaintiff's *Monell* claims for failure to protect, unconstitutional conditions of confinement, and deliberate indifference. Although Plaintiff broadly alleges numerous similar incidents of Jail officials failing to protect detainees, she does not provide any factual detail to establish a plausible pattern. Finally, for the deliberate indifference claim, Plaintiff does not identify the official policy being challenged, let alone establish its existence through previous incidents, ratification, or action by the final decisionmaker.

Therefore, the Court dismisses without prejudice Plaintiff's *Monell* claims for excessive use of force, failure to protect, unconstitutional conditions of confinement, and deliberate indifference.

### iii.  Duplicative Claims

Finally, Defendants argue that the claims against Harris County and Sheriff Gonzalez in his official capacity are duplicative. "[O]fficial capacity suits are really suits against the governmental entity[.]" *Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009). Thus, "the Fifth Circuit has held that it is appropriate to dismiss claims against officers in their official capacities when the 'allegations duplicate claims against the respective governmental entities themselves.'" *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 832 (S.D. Tex. 2011) (Ellison, J.) (quoting *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)). Plaintiff's suit against Sheriff Gonzalez in his official capacities "is redundant because it is no different from suing [Harris County] directly." *Heckford v. City of Pasadena*, 2021 WL 2517405, at *6 (S.D.

Tex. June 18, 2021) (Ellison, J.). Therefore, the Court dismisses with prejudice Plaintiff's claims against Sheriff Gonzalez in his official capacity.

### c. Defendant Hodges' Motion to Dismiss

In the third and final pending Motion to Dismiss, Defendant Taylor Hodges seeks to dismiss the conditions of confinement claim against her on the basis of the statute of limitations, failure to state a claim, and qualified immunity.

### i. Statute of Limitations

First, Hodges asserts that Plaintiff's "claims against Hodges are barred by the statute of limitations and should be dismissed." ECF No. 58 at 8. Defendant Hodges was not named in Plaintiff's Original Complaint but was named in her First Amended Complaint.

The statute of limitations for a 42 U.S.C §1983 claim in Texas is two years. *Beckwith v. City of Houston*, 790 F. App'x. 568, 572-73 (5th Cir. 2019). When a plaintiff adds a defendant after the limitations period has run, Rule 15(c) allows the plaintiff to relate the claims filed against the new defendant back to the date of the original filing. *See* FED. R. CIV. P. 15(c). To do so, the plaintiff must show both that the added defendant received adequate notice of the original lawsuit and that the defendant knew that, but for a mistake concerning the identity of the defendant, the action would have originally been brought against the defendant. *Jacobsen v. Osborne*, 133 F.3d 315, 319-22 (5th Cir. 1998). Rule 15(c) is meant to "correct a *mistake* concerning the identity of the party." *Id.* at 321. "'Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.'" *Id.* (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995)).

Here, Plaintiff filed her First Amended Complaint asserting claims against eight new named defendants on September 5, 2024, more than two years after she was released from the Jail

on September 1, 2022. Therefore, the claims were brought after the statute of limitations had expired, and under Fifth Circuit caselaw, the claims against the new defendants do not relate back to the original complaint.

Hodges argues that the last act or omission attributed to her occurred on August 18, 2022, and Plaintiff did not seek leave to amend her complaint until August 29, 2024. ECF No. 58 at 9. She concludes that the claim against her is barred by the statute of limitations and asserts that there is no basis to toll the statute of limitations. *Id.*

Plaintiff responds that the statute of limitations should be equitably tolled in this instance. On April 3, 2024, Plaintiff moved for early discovery to identify the John Doe defendants from her original complaint. ECF No. 18. On May 6, 2024, the Court held a hearing and granted the Motion for Early Discovery. The parties later filed a Docket Control Order setting the deadline for amended pleadings as July 15, 2024. ECF No. 41. On July 12, 2024, Plaintiff filed an Unopposed Motion for Extension of Time to File Amended Complaint which the Court granted. ECF No. 48, 49. Then, on August 29, 2024, the deadline to file an amended complaint, Plaintiff filed a Motion for Leave to File First Amended Complaint which the Court granted on September 5. ECF Nos. 50, 51.

Plaintiff explains that she worked diligently with counsel to identify the Doe defendants after receiving discovery beginning on May 13, 2024. During that time, "Plaintiff has been homeless, has not had access to a mobile or home phone, has been incarcerated in county jail, and has been severely affected by a major hurricane and the resulting widespread damage. Her mother's home, where she was living for a portion of this period, was destroyed in the hurricane. Plaintiff has had no access to a working computer on which she could have reviewed any discovery sent to her via email by Plaintiff's counsel." ECF No. 64 at 10. Plaintiff further asserts that she had

been operating under the belief that the extended deadline to file an amended pleading constituted equitable tolling of the statute of limitations and that the Court's granting of leave to file the first amended complaint simultaneously granted her request for equitable tolling and made that ruling the law of the case. *Id.*

Regardless of whether it is already the law of the case, the Court finds that it should grant equitable tolling of the statute of limitations. A court may equitably toll the applicable limitations period for claims under 42 U.S.C. § 1983. *See Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). "The doctrine of equitable tolling preserves a plaintiff's claims when the strict application of the statute of limitations would be inequitable." *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (per curiam) (internal quotations omitted).

Texas's equitable tolling principles control this litigation just as they control the statute of limitations itself. Texas courts sparingly apply equitable tolling and look to whether a plaintiff diligently pursued his rights; litigants may not use the doctrine "to avoid the consequences of their own negligence." *Hand v. Stevens Transport, Inc.,* 83 S.W.3d 286, 293 (Tex. App. 2002). However, courts in this circuit have granted equitable tolling when a plaintiff has been diligent. *Green v. Doe*, 260 F. App'x. 717, 719 (5th Cir. 2007) ("We conclude that Green does not need his amendment to relate back under rule 15(c)(3), because limitations has been equitably tolled by the abuse of discretion in denying his original motions for discovery."); *Rodriguez v. City of Austin*, No. 1-21-CV-01087-RP, 2024 WL 3242279, at *4 (W.D. Tex. June 26, 2024), *report and recommendation adopted*, No. 1:21-CV-1087-RP, 2024 WL 3829561 (W.D. Tex. Aug. 14, 2024) ("Because Rodriguez demonstrated reasonable diligence in seeking to identify the responsible officers, the undersigned finds that equitably tolling the statute of limitations is appropriate.").

"The diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland v. Florida*, 560 U.S. 631, 653 (2010). The Fifth Circuit has directed that "[w]hether diligence is 'reasonable' is an 'equitable, often fact-intensive inquiry' in which courts are instructed to avoid 'mechanical rules' and instead to 'draw upon decisions made in other similar cases for guidance.'" *Palacios v. Stephens*, 723 F.3d 600, 605 (5th Cir. 2013) (quoting *Holland*, 560 U.S. at 650, 654).

Here, there is more than enough evidence to conclude that Plaintiff was reasonably diligent. Within the statute of limitations period, she requested and was granted early discovery to identify the Doe defendants, and she combed through the discovery along with photographs of officers to identify them for the complaint. Therefore, the Court finds that equitable tolling of the statute of limitations is appropriate, and Plaintiff's claims against Hodges are not barred.

### ii. Fourteenth Amendment Conditions of Confinement Claim

Plaintiff brings an unconstitutional conditions of confinement claim against several Jail officials, including Hodges, for housing her in filthy Cell 4L1 for two weeks.

### 1. Constitutional Violation

Under Fifth Circuit precedent, "[c]onstitutional challenges by pretrial detainees may be brought under two alternative theories: as an attack on a 'condition of confinement' or as an 'episodic act or omission.'" *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (citing *Hare*, 74 F.3d at 644–45). "A condition is usually the manifestation of an explicit policy or restriction: the number of bunks per cell, mail privileges, disciplinary segregation, etc." *Id.* However, "a condition may reflect an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Id* (quoting *Hare,* 74 F.3d at 645.). Plaintiff's claim does not appear to satisfy the "heavy burden" of proving a pattern

of acts or omissions or extended or pervasive misconduct by Jail officials. *Id.* Plaintiff presents no caselaw finding a condition of confinement claim to be appropriate under these circumstances, so Plaintiff's claim should instead proceed under the episodic act or omission theory.

An episodic-acts-or-omissions claim "faults specific jail officials for their acts or omissions." *Shepherd*, 591 F.3d at 452. The Fifth Circuit has held that "the episodic act or omission of a state jail official does not violate a pretrial detainee's constitutional right to be secure in his basic needs, such as medical care and safety, unless the detainee demonstrates that the official acted or failed to act with deliberate indifference to the detainee's needs." *Hare*, 74 F.3d at 647–48. To establish liability in an episodic act claim alleging a violation of the Fourteenth Amendment, a pretrial detainee must establish "objective exposure to a substantial risk of serious harm" and "that prison official acted or failed to act with deliberate indifference to that risk." *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). A prison official acts with deliberate indifference "only if he knows that the inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346.

The Fifth Circuit has found a substantial risk of serious harm where an inmate was housed in a cell that was covered in feces and had a urine-soaked floor. *Taylor v. Stevens*, 946 F.3d 211, 220 (5th Cir. 2019), *cert. granted, judgment vacated sub nom. Taylor v. Riojas*, 592 U.S. 7 (2020); *see also Gates v. Cook*, 376 F.3d 323, 338 (5th Cir. 2004); *McCord v. Maggio*, 927 F.2d 844, 846 (5th Cir. 1991). Plaintiff's similar allegation that she was held in a cell that "was visibly covered with feces, ridden with bed bugs, had blood on the ceiling, and had no air circulation" establishes a substantial risk of serious harm. ECF No. 52 ¶ 59. Also, like the prisoner in *Taylor*, she was not given the ability to clean her cell to ameliorate the health hazard. *Id.* ¶ 60. Therefore, Plaintiff has

24

plausibly alleged that the conditions in the cell exposed her to a substantial risk of serious harm and denied her the minimal civilized measure of life's necessities.

The Fifth Circuit has also found deliberate indifference in the face of such cell conditions. "Deliberate indifference is an extremely high standard to meet. A prison official displays deliberate indifference only if he (1) knows that inmates face a substantial risk of serious bodily harm and (2) disregards that risk by failing to take reasonable measures to abate it." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (cleaned up). Deliberate indifference can be proven via circumstantial evidence, "and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Gates*, 376 F.3d at 333. The Fifth Circuit has found that the risk posed by an inmate's exposure to bodily waste for six days "was obvious" enough to establish deliberate indifference, especially where an inmate did not have a clean place to sleep and defendants failed to remedy the conditions. *Taylor*, 946 F.3d at 222. Here too, the substantial risk of harm to Plaintiff from being housed in the filthy cell was "obvious," Plaintiff did not have a clean place to sleep since she was given a blanket with feces on it, and Defendants failed to remedy the conditions despite her repeated complaints. ECF No. 52 ¶¶ 59-68. Hodges herself is alleged to have retorted "What do you think this is, the Hilton?" when Plaintiff asked for cleaning supplies, so she was aware of the substantial risk of harm to Plaintiff. *Id.* ¶ 60. Hodges' statement that "Plaintiff fails to allege specific actions committed by" her is clearly incorrect, and Plaintiff's allegations about Hodges satisfy the deliberate indifference standard. ECF No. 58 at 11. Therefore, Plaintiff has plausibly alleged deliberate indifference and has met her burden to show a constitutional violation of her Fourteenth Amendment rights.

### 2. Qualified Immunity

Next, the Court must evaluate whether Plaintiff's right to be free from such conditions was clearly established at the time of the events. The Supreme Court held two years before Plaintiff's incarceration in the Jail that housing a detainee in an unsanitary, feces-contaminated cell for six days violated the Eighth Amendment. *Taylor v. Riojas*, 592 U.S. 7, 9 (2020). Given that Plaintiff was housed in such a cell for two weeks, Supreme Court precedent clearly establishes the law. Accordingly, Hodges is not entitled to qualified immunity on Plaintiff's claim at this stage.

## IV.    CONCLUSION

The Motion to Dismiss filed by Arnoldo Martinez and Andrew Rada is **GRANTED IN PART** and **DENIED IN PART**. The Court **DISMISSES WITH PREJUDICE** Plaintiff's state law claims against Martinez in his individual capacity, but all other claims against Martinez and Rada survive.

The Motion to Dismiss filed by Defendants Harris County and Sheriff Ed Gonzalez is **GRANTED**. The Court **DISMISSES WITH PREJUDICE** all claims against Sheriff Ed Gonzalez in his official capacity and **DISMISSES WITHOUT PREJUDICE** Plaintiff's *Monell* claims for excessive use of force, failure to protect, unconstitutional conditions of confinement, and deliberate indifference.

The Motion to Dismiss filed by Taylor Hodges is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 17th day of June, 2025.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE